[Crim. No. 1698.   Third Appellate District.—December 1, 1939.]

THE PEOPLE, Respondent, v. PAUL TIBBITTS, Appellant.

[Crim. No. 1703.   Third Appellate District.—December 1, 1939.]

THE PEOPLE, Respondent, v. PAULINE TIBBITTS, Appellant.

Margaret Gettys Hall for Appellants.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The appellants, who are husband and wife, were jointly charged and tried on three counts of an information for burglary of the second degree. Paul was convicted of all counts of the information. His wife was convicted of the second charge. Separate notices of appeal and transcripts were filed in this court by the defendants. The causes were consolidated by this court for hearing.

It is contended the judgments are not supported by the evidence, and that the court erred in the admission of evidence and in failing to instruct the jury on its own motion regarding essential elements of the crime of burglary.

The first count of the information charges the defendants with entering the store building of Montgomery Ward & Company in Modesto, with intent to commit larceny. The second count charges them with entering the garage of Alfred Matthews in the same city, with a similar intention. The third count charges them with entering the store building of J. C. Penney Company in that city, with the same intent of committing larceny.

The evidence shows that in company with John E. Diebler on the different dates alleged, the men entered each of the buildings mentioned through the skylights and stole a radio, and other merchandise, tools and machinery, an automobile and a safe containing about $2,300. Mrs. Tibbitts was an

accomplice in the burglaries. The men were engaged in a roofing business at Modesto and were familiar with the means of entering the buildings through the skylights. Mr. and Mrs. Tibbitts lived in Modesto, and Diebler roomed and boarded with them. In entering the buildings the men wore gloves to avoid leaving fingerprints. By previous arrangement Mrs. Tibbitts, with defendants' automobile, met the men near the Matthews garage in the nighttime immediately after they had robbed that building. From that garage the men stole a Ford truck upon which they placed the safe and drove along a country road several miles distant to a point near Waterford, where they parked some distance from the road. Mrs. Tibbitts followed them in the defendants' car. There they burned the door from the safe by means of an acetylene torch device which they had also stolen. Mrs. Tibbitts held a canvas to conceal them from view during the process. When the safe was opened they removed the money and divided it equally between Diebler and the defendants. The stolen car and safe were left at the point where the safe was opened. The parties fled. Diebler and the defendants left Modesto and went to Vallejo. The defendants sold the radio and some other stolen property, which were afterward reclaimed. The defendants drove to Oklahoma where they were subsequently arrested and charged with the crime of burglary. A hand-bag and some other stolen property were found in their possession. Mr. Tibbitts admitted to the arresting officer that he knew the goods were "hot", meaning that he knew they were stolen. Other incriminating statements in the nature of admissions of guilt were also made by them.

John Diebler was arrested and pleaded guilty to the burglaries. He testified at the trial to all of the circumstances of each burglary as previously related, and implicated both defendants in the crimes. There appears to be no reasonable doubt of their guilt.

The evidence abundantly supports the judgments of conviction of both defendants on all of the counts of the information. The defense consisted of a denial of guilt on the part of each defendant, and a claim that Diebler left the stolen property which was found in their possession in his room at their home, and that they appropriated the goods to repay them for board and rent which he owed to them.

■ The only question regarding the facts of the burglaries is whether there are sufficient corroborating circumstances to fulfill the requirements of section 1111 of the Penal Code. We conclude there is an abundance of corroborating circumstances to meet the requirements of that section. It is sufficient compliance with section 1111 of the Penal Code if testimony by an accomplice to the crime is corroborated by circumstances which "tend to connect the defendant with the commission of the offense". The defendant's own statements or admissions, together with the facts related by the accomplice, may be sufficient proof of guilt to sustain the conviction. (*People* v. *Adinolfi,* 106 Cal. App. 261, 264 [289 Pac. 176] ; *People* v. *McClain,* 115 Cal. App. 505, 508 [1 Pac. (2d) 1085].) It was solely the province of the jury to determine whether the defendants told the truth when they testified that they were ignorant of the burglaries, and that they took the property which Diebler left in his room to pay them for rent and board which he owed. (*People* v. *White,* 35 Cal. App. (2d) 61 [94 Pac. (2d) 617].) At least they had some of the stolen property in their possession. They sold the radio for $4. They left Modesto immediately after the burglaries were committed. They visited Diebler, who was confined in the general hospital at Benicia in November, after the commission of the burglaries. While they were there they went to the home of Ann McLeod, who was an acquaintance of theirs. She testified that in a conversation regarding a considerable sum of money which the defendants possessed, Mr. Tibbitts asked Mrs. McLeod if she knew where the money came from. Mrs. McLeod replied that Mr. Diebler told her "he and you worked for it". To this statement Mr. Tibbitts replied, "We did, we worked darn hard for it." Mrs. Tibbitts then said, "I helped them, *I held the canvas for them while they blew the door off the safe.*" Later Mr. Tibbitts in the presence of his wife said to Ann McLeod regarding Mr. Diebler "If that —— —— don't keep his damned mouth shut, I'll kill him." When Mrs. McLeod asked what he had done, he replied, "He parked our baggage in the Willys 77 on a down town street. *Wouldn't that have been a hell of a mess if the cops had gotten it?*" This was an admission their baggage contained stolen goods. The officer who arrested the defendants in Oklahoma testified that Mr. Tibbitts told him

where to find some of the stolen articles which he had disposed of. The officer then asked him, "Did you know at the time you sold them to Noble, that they were stolen articles?" to which inquiry he replied that he did.

The record contains many other incriminating circumstances leading us to conclude there is no reasonable doubt of the guilt of the defendants.

Regarding the defense that Diebler was the only party who committed the burglaries and that he falsely implicated the defendants as accomplices to the crimes, the jury was specifically warned by the express terms of defendants' instruction number 1 as follows:

"It is not necessary for the defendants to prove that another person or persons may have committed the crimes alleged by the state, but if the facts and circumstances have been introduced in evidence which raise a reasonable doubt as to whether the defendant or defendants committed the crime or crimes alleged, you should acquit the defendant or defendants."

The defendants contend that the court erred in giving to the jury an instruction defining burglary in the exact terms of section 459 of the Penal Code, because it informed them that if they found the defendants entered the building "with the intent to commit grand or petit larceny *or any felony*", they might be convicted. In support of their contention in that regard the defendants rely on the case of *People* v. *Young*, 65 Cal. 225 [3 Pac. 813]. That case is not authority for the point urged. In that case a judgment of conviction for burglary was affirmed. The court there said: "There was no error in giving the definition of burglary laid down in section 459 of the Penal Code." In the present case the defendants were specifically charged with entering the buildings *with the intent of committing larceny*. They were not charged with the commission of any other felony except larceny. The evidence shows that they were guilty of grand larceny. There is no evidence of the commission or the intent to commit any felony other than larceny. Grand larceny is a felony. The jury could not have been misled by the statutory definition of burglary which was given to the jury.

The court did not err in the admission of evidence which may have tended to indicate that the defendants had

previously been suspected of other larcenies. The challenged evidence was adduced by a statement made by the chief of police of Modesto who interviewed the defendants June 14, 1939, after their arrest, on the specific charges involved in this action. He said:

"I told Mr. Tibbitts that I had just returned from Vallejo and that he was suspicioned of robbing three safes in Vallejo."

A motion to strike that answer from the record was denied. The witness then proceeded to say:

"I informed him on my return from Vallejo where he was suspicioned of burning three safes in Vallejo and also of taking part in the robbery of Al Matthews garage and the Montgomery Ward store and the Penney store of this city, to which he denied any knowledge of any of the jobs at all. I told him of articles that had been taken from the garage, a safe, a car, some tools and a sander and asked him what knowledge he had of those articles. He said 'None whatever.' I asked him regarding a radio and a flexible cable, taken from the Montgomery Ward store and he denied any knowledge of that or of the articles."

There was no motion to strike out this latter statement. The court was not asked to instruct the jury to disregard the reference to other safe-cracking incidents. They were merely incidentally related as a part of the question propounded to the defendant regarding the very burglaries with which he was charged.

The rule is well established that in the prosecution of a criminal charge evidence of other similar offenses committed at or near the same time may be competent to prove guilty knowledge, intent or motive for the commission of the crime charged by means of identical extraordinary methods or schemes. (*People* v. *Robinson*, 107 Cal. App. 211, 224 [290 Pac. 470]; 8 Cal. Jur. 68, secs. 172–174.) In the Robinson case it is said in that regard that the similarity of the unusual methods of procedure "furnish an example of his methods". But care should be exercised in admitting evidence of other crimes on account of their apparent prejudicial nature, unless the intent, purpose or motive of the accused person is a direct issue in the charge for which the defendant is being tried. It is doubtful whether the mere fact that an accused

person is on trial for a burglary involving the cracking of a safe justifies the admission of evidence of other distinct safe-cracking enterprises by the defendant. In the case of *People* v. *Schneider*, 126 Cal. App. 749 [14 Pac. (2d) 1018, 15 Pac. (2d) 540], Mr. Justice Houser correctly illustrates the application of the proper rule in that regard by quoting with approval from 8 Ruling Case Law, 202, as follows:

''Where a felonious intent is an essential ingredient of the crime charged, and the act is claimed to have been innocently or accidentally done, or by mistake, when the result is claimed to have followed an act lawfully done for a legitimate purpose, or where there is room for such an inference, it is proper to characterize the act by proof of other like acts producing the same result, as tending to show guilty knowledge, and the intent or purpose with which the particular act was done, and to rebut the presumption that might otherwise obtain. But the evidence of the other acts relied upon must show them to be identical with the act in question, otherwise they have no probative value so far as this question of mistake or accident is concerned. Again, it is competent to show that the crime charged was part of a common scheme or plan which included numerous offenses.''

In the present case, however, the voluntary statement of the witness merely incidentally referred to other safe-cracking affairs, in relating a conversation with the defendant regarding the particular crimes with which he was charged. The prosecution did not elicit that portion of the statement. It does not appear the objectionable statement could have been anticipated. Moreover, it does not appear there was a miscarriage of justice in the present conviction of the defendants. The error, if any, was therefore cured by the provisions of article VI, section 4½ of the California Constitution.

The judgments and the orders are affirmed.

Tuttle, J., and Pullen, P. J., concurred.