[Crim. No. 3898. Second Dist., Div. Three. July 11, 1945.]

THE PEOPLE, Respondent, v. WILLARD L. WHALEN, Appellant.

144

S. C. Stoner for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, Fred N. Howser, District Attorney, and Robert Wheeler, Deputy District Attorney, for Respondent.

SHINN, J.—Defendant was convicted in a trial before the court of one offense of statutory rape, and four offenses of violation of sections 288 and 288a of the Penal Code, the subjects being two females aged 11 and 14, respectively. He was sentenced on all five counts, the terms to run concurrently. Upon the appeal he urges errors in the admission and exclusion of evidence and error in the allowance of amendments of the information.

One of the alleged errors complained of was the admission of evidence that the children first complained of defendant's alleged acts to their father, Mr. Tipton, more than two years after the date of the last alleged act and that the testimony was inadmissible because of this long delay. It is unnecessary to discuss this point, for the reason that the testimony came in without objection. The children were living with their parents at all times. Their testimony was that similar acts of the defendant had been committed at intervals during several years—as to one of the children at least four years—preceding the final act. They were cross-examined at length as to their feelings toward defendant and their reasons for not confiding in their parents. It is apparent from the record that defendant's counsel did not deem the testimony with reference to the complaints to be detrimental to the defense, but that, upon the contrary, he regarded the silence of the children during this long period as a fact which tended to discredit them and to weaken their testimony. Defendant has had the full benefit of this argument and may not now be heard to say that the evidence should not have been admitted.

A second claim of error has merit. Defendant's daughter, 19 years of age, was allowed to testify, over defendant's objection, that defendant had repeatedly endeavored to have sexual intercourse with her and that she had made complaint to Mr. and Mrs. Tipton, the parents of the children, respecting defendant's conduct. Also the parents were allowed to testify as to the complaints and statements made to them by defendant's daughter. This evidence tended to prove offenses

other than the ones for which defendant was on trial, it tended to degrade him, and was inadmissible. A discussion of the point requires a general statement of the evidence.

█ Defendant, who is now 45 years of age, had known the parents in the East. He had preceded them to California, had corresponded with them and when they came to California in 1936 he took up his home with them as a boarder and roomer. He was then a widower. He lived with them until July, 1942, when he moved elsewhere in Los Angeles, but he continued to see them occasionally. He married his present wife in November, 1942. He testified that during all of this time he lived in a meretricious relationship with the mother of the children. This she denied. He further testified that the reason he left the home was that he took a nighttime job and was told that the parents did not wish a day sleeper living in the home. Defendant was questioned, upon cross-examination, and over his objection, whether he had not, on several occasions, asked his daughter to have intercourse with him and whether he had not, in the home of his uncle, attempted an act of intercourse with her. His answers consisted of denials. For the avowed purpose of impeachment and to prove that defendant's testimony as to the circumstances of his leaving was untrue, the People called as a witness in rebuttal defendant's daughter and elicited from her testimony as to defendant's conduct with her and the fact that she had complained to the parents concerning the same. She testified that she had been separated from her father for many years, living in the homes of friends and relatives; that she came to California with her father in July, 1941, and thereafter lived in the home of Mr. and Mrs. Tipton, where her father was living, and that she remained there until she was married in September, 1942. She testified that in July of 1942 she told the parents that her father had tried to have sexual relations with her within two weeks after her arrival in California; that he endeavored to force them upon her, and that he continued his efforts thereafter, sometimes every two or three weeks, sometimes once or twice a week, but that he had never succeeded. Then the parents were called by the People and questioned as to the complaints made by defendant's daughter. The father testified to hearing a commotion in the daughter's room, the door being closed, and of hearing defendant insist that his, defendant's, daughter have sexual relations with him and of hearing the daughter crying. He testified that he heard defendant

accuse his daughter of having had sexual relations with him, the witness. The mother of the two children was called in rebuttal and testified that she and her husband asked defendant to leave the home because he was bothering his own daughter and that they told him that that was the reason they wished him to leave. The People seek to sustain the admission of all of this testimony under the rule that where evidence tends logically, naturally and by reasonable inference to establish any material fact for the People or to overcome any material matter sought to be proved by the defense, it is not rendered inadmissible by the fact that it may have a tendency to show defendant guilty of an offense other than the one with which he is charged. This is a well established rule of criminal law but it has no application to the instant case.

If defendant had left the home after the date when, according to the testimony, the children first complained of his conduct, and if he had testified that the complaints of the children had not been mentioned and that he parted with the family upon friendly terms, such testimony would have been material and subject to impeachment. But the children had not yet made their accusations, and did not make them for some two years thereafter. Or if defendant had testified that he was asked to leave the home under circumstances which would have tended to prove that the parents acted from malicious motives or if they had threatened him or otherwise exhibited animosity, it would have been proper to rebut defendant's testimony upon those points. That, however, is not the situation. Defendant's leaving the home under the circumstances had no possible connection with his treatment of the two little girls and his testimony tended to disprove any feeling of animosity on the part of the parents at that time. There was nothing in his testimony which called for rebuttal. The purported impeaching testimony related to testimony of the defendant which was not only immaterial but also was not unfavorable to the prosecution.

█ The authorities are unanimous in holding that a defendant's right to a fair trial in this sort of case is violated by the receipt of evidence of the commission of acts similar to those charged, with a person or persons other than the prosecutrix. (*People* v. *Asavis* (1937), 22 Cal.App.2d 492 [71 P.2d 307] and cases cited.) █ The People insist that even if the evidence was improperly admitted, it was not prejudicial, for the reason that it did not establish the commission of a crimi-

nal offense. There are two good reasons why this position cannot be sustained. A fair inference from the testimony of the daughter would be that defendant was guilty of acts of assault. But if this were not so the evidence was equally inadmissible. As stated in *People* v. *Glass* (1910), 158 Cal. 650-655 [112 P. 281], ''Not only is the prosecution thus forbidden to prove another crime, but the law does not sanction the introduction of evidence falling short of crime and designed merely to degrade and prejudice the defendant in the minds of the jury.'' The testimony which the daughter gave was shocking. It would be difficult to imagine accusations of misconduct which would have tended more strongly to arouse prejudice against defendant in the mind of the court. There is no room for speculation as to the extent of the harm occasioned by the receipt of such evidence. The implication in the questions asked upon cross-examination of defendant that he had been guilty of offenses against his daughter was highly improper and prejudicial. (*People* v. *Anthony* (1921), 185 Cal. 152, 158 [196 P. 47].) Even in the cases where it is proper to prove the fact that a complaint was made by the victim, it is never proper to prove anything more than that. ▇ All of the testimony of the daughter which consisted of a recital of what she had told the Tiptons was hearsay and inadmissible. (*People* v. *Adams* (1939), 14 Cal.2d 154 [93 P.2d 146] ; *People* v. *Wilmot* (1903), 139 Cal. 103 [72 P. 838].) That the testimony in question deprived defendant of a fair trial admits of no doubt.

▇ The only question remaining is whether the evidence of defendant's guilt was so strong and convincing as to require an affirmance, notwithstanding the serious errors in the admission of evidence. The conclusion which we reach is that upon the entire record the conviction appears as a miscarriage of justice, as that term has often been defined. The whole case is one of the credibility of witnesses. We are unable to tell from the record with what degree of confidence the trial court accepted the testimony of the children as true. Although there is nothing in the testimony itself which would indicate that it was untrue, there are important circumstances to be considered in determining the strength of the case of the People. There was evidence of bitter feeling on the part of the parents toward defendant before they had heard complaints from their children; that in December, 1942, defendant had gone to their home intending to take therefrom furniture which he claimed,

consisting of a bed, mattress and springs, a dresser, chest of drawers, blankets, a table, and other articles; that after discussing the matter with the parents he left the articles there for the time being, and that the father of the children then said to one of the witnesses that if defendant "ever tried to take the furniture out again that he would put him away where he would not bother anybody for a good long time, he was going to prefer rape charges against him." This statement was stricken out on motion of the People on the ground that it was hearsay, the court saying, "If you want it stricken, I will strike it. I think it helps the People's case but I will strike it. It may be stricken." Mr. Tipton, it will be recalled, testified that he overheard defendant accusing his (defendant's) daughter of having had sexual relations with Tipton. Shortly before July 7, 1944, defendant made a demand upon Mr. and Mrs. Tipton for possession of the furniture which was in the home. On July 7 he brought an action in claim and delivery against them and he and his wife drove to the home with two officers to take possession of the furniture. The officers testified to the occurrences at the home. They asked Mrs. Tipton to allow defendant herein to come in to identify the property; she allowed him to enter but refused admission to his wife. According to the officers, Mrs. Tipton said to defendant: "Well, I never thought you would do it. I didn't think you had nerve enough, but you have finally gotten up enough nerve to do what you were going to do" and that she said "it would be the sorriest day that he ever lived, that he had done what he was doing" and she also told her children, "Well, you see what he has done, he is going to make it so that you are going to have to sleep on the floor, or you are not going to have a bed to sleep in." According to the evidence it was on the second day after this occurrence that the two girls made a complaint to their father of defendant's conduct. Defendant testified that some months after he left the home Mr. Tipton accused him of being the father of a baby, born to Mrs. Tipton after defendant came to California, and threatened to kill him. There was also evidence that Mrs. Tipton upon numerous occasions refused to speak to defendant's present wife and exhibited an unfriendly attitude toward defendant after he married. This evidence of animosity prior to the date of the children's complaints, the absence of evidence, corroborating the testimony of the children, and the fact that they remained silent, under defendant's alleged mistreatment, until they

were told that his taking the furniture away was an injustice to them, make it impossible for us to say that in spite of the errors we have mentioned, defendant has been justly and legally convicted.

We have one additional observation to make which seems appropriate in view of the record. It has been emphasized time and again that cases of this nature should be tried with the greatest of care. Reversals are inevitable if this admonition is not observed. There was a good deal of evidence received which was wholly irrelevant to the issues in the case. After defendant's daughter had testified to his alleged conduct toward her and of her complaint to the Tiptons, the case took a turn in which the rules of admissibility of evidence and the consideration of evidentiary values were lost sight of. The daughter was questioned on cross-examination, over the objection of the district attorney, whether she had not had sexual relations with Mr. Tipton, and answered in the negative. In overruling the objection the court stated: ''It goes to her credibility.'' The objection should have been sustained. The methods of impeachment of witnesses are well defined; proof of specific wrongful acts is not among them. Court trials would be greatly complicated and oftentimes impeded by reluctance to give testimony if the law deemed credibility to be dependent upon or commensurate with chastity. As an illustration, the ruling in question was followed by testimony by Mr. Tipton that he had not had improper relations with defendant's daughter, and by testimony of the daughter's divorced husband that he had found his wife in bed with Tipton on several occasions, and by evidence that this last witness was serving a term in the county jail for some undisclosed offense. All of this line of improper testimony resulted from the original error in the cross-examination of the defendant and the subsequent receipt in evidence of the testimony of the daughter and the Tiptons. Whatever the conclusion of the court may have been upon this collateral issue, it should not have been accorded any weight in considering the credibility of the witness. The implication is, however, that a conclusion in favor of her chastity would have added something to her credibility. The cross-examination of the witness with reference to specific wrongful acts was wholly improper. The mere fact that she testified against her father demonstrated her unfriendly attitude and if this had not been sufficient, she testified to her unfriendliness in answer to a direct question.

Neither the improper cross-examination of the witness nor any of the evidence which followed could be justified on the theory that it was an inquiry as to the bias or prejudice of the witness. Not only the fact that she testified against defendant, but her direct testimony of animosity should have foreclosed further inquiry along that line. The foregoing remarks are added to emphasize the fact that accepted rules of evidence should be followed with great strictness in cases of this nature.

It is unnecessary to consider other alleged errors urged by appellant.

The judgment and order denying a new trial are reversed.

Desmond, P. J., and Wood (Parker), J., concurred.