[Crim. No. 2501.   First Dist., Div. One.   Jan. 16, 1948.]

THE PEOPLE, Respondent, v. GEORGE CASSANDRAS, Appellant.

Walter H. Duane for Appellant.

Fred N. Howser, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

PETERS, P. J.—By an amended information appellant, George Cassandras, was charged with and convicted by a

jury of rape with force or violence alleged to have been committed upon the person of Carmen Brown. He appeals from the order denying his motion for a new trial and from the judgment, contending that there is no evidence that he employed force or violence, and that the trial court committed prejudicial error in allowing the prosecution to prove that some time prior to the date of the charged rape appellant had raped another woman under circumstances similar to those testified to by the prosecutrix.

The record is quite short. The prosecution produced but two witnesses and the defense produced no testimony at all, the only witness called by the defense being a hotel clerk who knew nothing about the case or the parties. The appellant did not take the witness stand in his own behalf. The record shows that Carmen Brown is a divorcee and the mother of two small children. She testified that on February 20, 1947, in the late afternoon, she visited the United States Employment office at 13th and Mission Streets, San Francisco, in search of employment; that the appellant accosted her as she was leaving and asked her if she wanted a job; that he told her that he could get her a job as a "soda fountain girl" at $12 per day; that there was a gambling place in the rear of the fountain premises, but he assured her that no one engaged in the gambling enterprise would bother her; that there was another girl working at the fountain by the name of Marie who would tell her what to do; that the boss's name was Tony; that she informed appellant that she would consider the job "as long as I won't have nothing to do with men"; that appellant invited her to come over to the hotel to meet "the boss and this girl"; that they then drove in appellant's automobile to 14th and Valencia Streets where appellant parked near a hotel; that they entered the hotel where appellant got a key at the desk and proceeded to the fourth floor; that appellant opened the door to a room; that "I said I didn't want to go in and he pushed me through" the open door; that she then asked appellant why Tony and Marie were not there as he had promised; that appellant denied that he had made any such representation and told her "to sit down and relax"; that he then talked to her about the job and she told him "I didn't want the job, I wanted to go home"; that appellant then said "you should have thought of that before, because you are not going to get out of here until you undress and go to bed"; that she

told appellant she had to go home at once because her sister was sick and she had to look after her children; that appellant told her she was not getting out, and that if she tried to get out "I will call the clerk downstairs and the clerk will call the police and pick you up, they are good friends of mine, I will tell them you are a prostitute and they will take your children away"; that "I got scared, I hesitated for a while, and I didn't know what to do"; that appellant then told her she could go if she would pay him $25; that she told him that she did not have that much money and he then stated: "Then you'll have to take off your clothes and go to bed"; that she "didn't know what to do. I was scared he would hurt me. I didn't care about being hurt, I wanted to get home with my kids"; that she then removed part of her clothes and he removed the rest; that she got on the bed and "he told me to keep still if I didn't want to get hurt. I stayed still"; that he placed a towel over her eyes and then had an act of intercourse; that when the act was completed they dressed and appellant told her that she could not get out of the hotel unless she was in his company; that she was "scared that he would hurt me"; that appellant told her to call the police if she wanted, but that the police would not believe her but would "take my kids away"; that appellant then asked her how much she wanted and she told him that she did not want his money, that all she wanted was to go home; that she never accepted any money from him; that they left the hotel together; that she told appellant that she did not want to get in the automobile, but he insisted; that appellant told her he wanted her to go to a bar and find Marie and give her a message; that they drove near to a bar and she got out; that she did not go to the bar but boarded a streetcar and went home where she told her sister what had occurred, and her sister called the police.

Josephine Lieb was called as the next witness for the prosecution. She testified, over the strenuous objections of counsel for appellant, that on September 26, 1946, she was accosted by defendant outside the employment office at 13th and Mission; that appellant asked her if she knew where he could find two girls to work in a soda fountain at $8.25 for a five-hour shift; that she told appellant that she was married, had two children to support and had had soda fountain experience, and was looking for a job; that appellant told her if she would like this job he would be glad to

introduce her to the boss and his wife who were in Daly City; that at Daly City appellant went into an auto court, and, after calling at the office, stated that the boss was not there and drove to another auto court; that here he opened the door and they went in; that when she asked where the people were, appellant assured her that they would soon be there; that then appellant told her that the two auto courts were connected by short wave radio and that if she tried to leave, the proprietors would get in touch with the other auto court and tell them that the witness was a street-walker and had demanded from appellant more money than he was willing to pay; that he prevented her from leaving the room and ordered her to undress; that appellant threatened that unless she submitted he would have her arrested; that he told her he had had another girl arrested when she refused to submit; that appellant told her that she could not afford to go to the police inasmuch as she had two children to support; that when she got on the bed he put a towel over her face and had intercourse with her; that she left the auto court with him and he offered her $20 which she refused and demanded to get out of the car; that he finally let her go and she took the license number of the car and went immediately to the emergency hospital where she reported the affair.

The first contention of appellant is that this evidence fails to show the force and violence required by section 261 of the Penal Code. There can be no doubt that the information and the amended information charged a violation of subdivision 3 of section 261 defining rape as an act of intercourse where the resistance of the prosecutrix "is overcome by force or violence." The evidence discloses, however, that the information should have been framed on the theory of a violation of subdivision 4 of section 261. That subdivision defines rape as an act of intercourse where the prosecutrix "is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution." It is this subdivision that is involved in this proceeding. The fact that the information was framed under the wrong subdivision of the section is immaterial. It is well settled that, regardless of the subsection alleged, if the proof brings the case within any of the subsections of section 261, the offense of rape has been successfully proved by the prosecution. (*People* v. *Craig,* 17 Cal.2d 453 [110

P.2d 403]; *People* v. *Mummert,* 57 Cal.App.2d 849 [135 P.2d 665].)

It is the theory of appellant that the threats to call the police, to charge the prosecutrix with being a prostitute and to have her children taken from her, do not constitute either "force or violence" within subdivision 3, or "threats of great and immediate bodily harm" within the meaning of subdivision 4 of section 261. In this connection he cites *People* v. *Crosby,* 17 Cal.App. 518 [120 P. 441]; *People* v. *Fleming,* 94 Cal. 308 [29 P. 647]; *People* v. *Mullen,* 45 Cal. App.2d 297 [114 P.2d 11], and *People* v. *Cavanaugh,* 30 Cal. App. 432 [158 P. 1053].) None of these cases is in point. In the Crosby case the conviction of rape was set aside because of misconduct on the part of the district attorney. The court also held that the evidence was sufficient to show lack of consent induced by the administration of narcotics. Purely by way of dicta the court held that evidence that the defendant threatened to "slap" the prosecutrix was not a threat of great bodily harm.

In the Fleming case, *supra,* the prosecution was for assault with intent to commit rape, which required proof of that specific intent. The conviction was reversed on the ground that, while the evidence showed that the defendant was desirous of having intercourse with the prosecutrix, there was no evidence that he intended to accomplish his ends by forceful means. The court stated (p. 312): "It can hardly be said that the defendant used force to any degree, and from all circumstances of the affair, it would appear that physical force was not an element in his mind in attempting to carry out his intentions. There was no duress upon the part of the prosecutrix, no fear of personal violence, for there were no threats of violence."

The same situation as to the evidence existed in the Mullen case, *supra,* also a prosecution for an assault with intent to commit rape. The conviction was reversed because, although the evidence showed that defendant was most eagerly bent upon conquest, "at no time did he make any threat of personal violence." (P. 301.)

In the Cavanaugh case, *supra,* a conviction for forceful rape was reversed for failure to instruct that if the jury found that if the consent of the prosecutrix had been secured solely because defendant had told the prosecutrix he was a police officer and would have her arrested if she did not con-

sent, and not because of threats to do her great bodily injury, they must acquit. The court said (p. 434) : ''The mere threat to arrest her would not be a threat to use such force and violence as are described in section 261 of the Penal Code.'' The opinion discloses that the court was most distrustful of the story told by the prosecutrix in that case.

The above four cases, for several reasons, are not persuasive that the evidence in the instant case is insufficient. In the first place, the basic premise of appellant's argument is that the evidence shows that the sole reason why the prosecutrix consented to the act was because of the threats to call the police and charge her as a prostitute and thus have her children taken away. That is by no means a fair appraisal of the evidence. The evidence shows that the prosecutrix was reluctant to enter the room and was ''pushed'' into it by appellant; that appellant told her she was ''not going to get out of here until you undress and go to bed''; that ''you are not getting out''; that ''he told me to keep still if I didn't want to get hurt''; that the prosecutrix ''was scared he would hurt me. I didn't care about being hurt, I wanted to get home with my kids''; that she further testified ''I was scared . . . I didn't know what to do.'' This evidence is reasonably susceptible of the interpretation that threats to do great bodily harm were made, and that the consent of the prosecutrix was secured as a result of such threats.

In the second place, several of the cases cited by the appellant seem to reflect the old rule that in order to constitute a forceful rape the prosecutrix had to make the most vigorous and forceful resistance. That is no longer the law. The more modern view is well expressed in *People* v. *Ford,* 81 Cal.App.2d 580, 582 [184 P.2d 524], quoting from other cases, as follows: '' 'The courts no longer follow the primitive rule that there must be resistance to the utmost.' (*People* v. *McIlvain,* 55 Cal.App.2d 322, 329 [130 P.2d 131] . . . 'The resistance required in each case depends upon the circumstances of that case, such as the relative strength of the parties, the uselessness of resistance, the degree of force manifested and other factors. The resistance of the prosecutrix need only be such as to make nonconsent and actual resistance reasonably manifest.' (*People* v. *Burnette,* 39 Cal.App.2d 215, 224 [102 P.2d 799].)''

In *People* v. *Lay,* 66 Cal.App.2d 889, 893 [153 P.2d 379], the proper rule is stated in the following language: ''The

question here is whether the court could reasonably have concluded from the evidence either that the prosecutrix resisted and her resistance was overcome by force or that 'she was prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution. (Pen. Code, § 261.)

". . . Submission induced by the fear specified in the code is not consent. It is primarily for the woman who is attacked to decide to what extent, if at all, she can safely resist." (See, also, *People* v. *Norrington,* 55 Cal.App. 103 [202 P. 932]; *People* v. *Kinne,* 25 Cal.App.2d 112 [76 P.2d 714].)

█ Tested by these standards it is quite clear that the evidence shows consent induced by threats of the type contemplated by the code section. The evidence is ample to sustain the conviction.

The second contention of appellant is that it was serious and prejudicial error to have admitted into evidence the testimony of Josephine Lieb as to a prior rape committed upon her by appellant under circumstances substantially similar to the one charged. █ It is generally stated to be the rule that a defendant can be tried only for the offense charged, and that evidence of other independent crimes that has no direct tendency to prove a material fact involved in the crime charged is inadmissible. (See cases collected 8 Cal.Jur. § 167, p. 58.) However, to this rule there are several exceptions that are as well settled as the rule itself. In recent years these exceptions have been so extended that the rule appears to have become the exception and the exceptions the rule. (See, *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924]; cert. denied 329 U.S. 790 [67 S.Ct. 356, 490, 91 L.Ed. 677]; note 35 Cal.L.Rev. 131.) One exception that is well settled in the law is that evidence of other crimes is admissible to show a pattern, scheme, design, project or plan of which the two crimes are a part. (See discussion 8 Cal.Jur. § 173, p. 69.) In such cases, inasmuch as the defendant has pleaded not guilty and thus put in issue all facts relating to the commission of the offense the evidence of the prior crime of a similar character is of value and admissible in that it tends to show a general plan, scheme or design which is of some direct probative value in proving that the crime of which defendant is charged was in fact committed by him. █ So far as this particular exception is concerned the evidence

must be restricted to other acts with a sufficiently high degree of common features with the act charged to warrant the inference that if the defendant committed the other acts he probably committed the act charged. (See, generally, II Wigmore on Evidence (3d ed.) § 357, p. 265; 23 Cal.L.Rev. p. 530; 26 Harv.L.Rev. 656; 46 Harv.L.Rev. 954; 51 Harv. L.Rev. 988.)

There are many examples of this exception. The following list of cases, while by no means complete, will serve to illustrate a few situations where this particular exception has been applied. In *People* v. *Lisenba,* 14 Cal.2d 403 [94 P.2d 569], defendant was charged with the murder of his wife for her insurance. It was held that evidence tending to show that he had murdered a prior wife for her insurance was admissible to show a plan of murdering wives for their insurance. The same rule was applied in *People* v. *Gosden,* 6 Cal.2d 14 [56 P.2d 211]. In *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924], the defendant was charged with the murder of her employer for her property, and under the general scheme or plan exception it was held that evidence was admissible that she had committed a prior murder to acquire the deceased's property and had served 18 years in jail. In *People* v. *Northcott,* 209 Cal. 639 [289 P. 634, 70 A.L.R. 806], in a prosecution for the murder of three boys alleged to have been committed to hide the crime of sodomy it was held that evidence of the commission and attempts to commit sodomy on others, and evidence of other murders, was admissible to establish ''a well planned scheme of appellant for abducting young boys in order that he might satisfy his abnormal desires, and then later kill them in order to cover up his crime.'' (P. 653.) (See, also, *People* v. *Craig,* 111 Cal. 460 [44 P. 186].)

The general pattern, scheme and plan exception has frequently been held applicable to show previous burglaries, larcenies or thefts, where the prior offenses were committed under circumstances similar to the one charged (*People* v. *Tibbitts,* 35 Cal.App.2d 669 [96 P.2d 812]; *People* v. *King,* 4 Cal.App.2d 727 [41 P.2d 593]; *People* v. *McGill,* 82 Cal. App. 98 [255 P. 261]; *People* v. *James,* 40 Cal.App.2d 740 [105 P.2d 947]; *People* v. *Lapierre,* 205 Cal. 462 [271 P. 497]; *People* v. *King,* 122 Cal.App. 50 [10 P.2d 89]), or, under the same circumstances, to show prior forgeries (*People* v. *McWilliams,* 117 Cal.App. 732 [4 P.2d 601];

*People* v. *Cowen,* 41 Cal.App.2d 824 [107 P.2d 659]), or prior perjuries (*People* v. *Todd,* 9 Cal.App.2d 237 [49 P.2d 611]). There are doubtless many other examples of the same rule.

In rape cases the courts have followed the general rule and also have recognized the general plan or design exception. Generally speaking, in such a prosecution, evidence of prior rapes committed on persons other than the prosecutrix is not admissible. (See, *People* v. *Whalen,* 70 Cal.App.2d 142 [160 P.2d 560]; see, also, annotation entitled: "Admissibility, in prosecution for sexual offense, of evidence of other similar offenses," 167 A.L.R. 565.) But where the prior rape or attempt is committed under circumstances remarkably similar to the one charged the evidence is admissible to show a plan or scheme to commit the crime in that fashion, even though the prior rape or attempt was committed on a person other than the prosecutrix. In such cases the evidence that defendant committed the prior offense tends to prove that he committed the offense charged. A case quite similar to the instant one is *People* v. *Cosby,* 137 Cal.App. 332 [31 P.2d 218]. There the defendant was charged with assault with intent to commit rape. The prosecutrix testified that she had placed an advertisement in a newspaper to secure work; that appellant telephoned her and asked her to call; that when she called he invited her to his room so that he could secure her references; that when she entered his room he attempted to rape her. It was held that evidence that on two prior occasions he had lured other women to his apartment under similar circumstances and attempted to ravish them was admissible. The court, after stating the general rule that such evidence is normally not admissible, declared that an exception to the rule was "that where several crimes are committed as part of one scheme or plan, all of the same general character, tending to the same common end, they may be given in evidence to show the process or motive and design leading up to the particular crime for which the prisoner is being tried, as tending to show logically that the crime in question was part of such common scheme." (P. 335.) The same rule was applied in a rape case in *People* v. *Branch,* 77 Cal.App. 384 [246 P. 811].

In the present case the evidence of the prior rape falls within the exception. It is quite obvious that the de-

fendant had formed a plan of approaching necessitous married women with children at this employment agency, and, by the promise to secure them a lucrative job, lured them to his room, where by threats to have them arrested and their children taken from them, and by the use of other threats, forced them to submit to him. The evidence of the prior rape committed under such circumstances corroborated the story of the prosecutrix and was of direct probative value in proving that defendant probably committed the crime charged in the fashion described by the prosecutrix.

The order denying the new trial and the judgment are affirmed.

Ward, J., and Bray, J., concurred.