[No. B166502. Second Dist., Div. Four. Oct. 14, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
KEITH L. WHITE, Defendant and Appellant.

## COUNSEL

Patricia A. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Victoria B. Wilson and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CURRY, J.**—Appellant Keith L. White appeals from his conviction on charges of forcible rape, forcible oral copulation by future threats, and robbery. In his original appeal, he contended that the evidence was insufficient to support the charge of oral copulation through threat of future injury. We sent a letter to counsel asking them to address whether the 1998 changes in Penal Code[1] section 288a, which separated the various methods of committing forcible oral copulation into different subdivisions, were intended by the Legislature to be technical and not substantive. While the appeal was pending, the United States Supreme Court issued its decision in *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*). Accordingly, we granted leave to file supplemental briefing on sentencing issues raised by *Blakely*. Finally, in August of this year, appellant sought, and we granted permission, to file a second supplemental brief seeking review of purported nunc pro tunc orders issued by the trial court after notice of appeal was filed. The effect of the orders was to substantially increase appellant's sentence on the robbery charge by increasing the enhancement.

In our original opinion, we concluded that substantial evidence supported appellant's conviction of forcible oral copulation, but that *Blakely* required reversal of the sentence imposed. Additionally, as respondent had conceded,

---

[1] All statutory references herein are to the Penal Code unless otherwise specified.

the trial court committed sentencing error by improperly increasing the enhancement on the robbery in its nunc pro tunc orders. We concluded that the matter needed to be returned to the trial court for resentencing. The case is now on remand from the Supreme Court for reconsideration in view of its decision in *People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534]. We continue to believe that remand for resentencing is required, but only for correction of the errors in the nunc pro tunc orders.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 10, 2003, a four-count amended information was filed, charging appellant with: forcible rape by means of force, violence, duress, menace, or fear of immediate and unlawful injury in violation of Penal Code section 261, subdivision (a)(2), in counts 1 and 3; forcible oral copulation by future threats in violation of section 288a, subdivision (c)(3), in count 2; and second degree robbery in violation of section 211 in count 4. It was alleged as to counts 1, 2, and 3 that appellant was ineligible for probation or suspension of sentence pursuant to section 1203.065, subdivision (a), and that he used a firearm or deadly and dangerous weapon within the meaning of section 667.61, subdivisions (a), (b), and (e). It was alleged as to all four counts that appellant personally used a firearm within the meaning of section 12022.53, subdivision (b).

Appellant pled not guilty to all charges. He was found guilty by a jury of one count of forcible rape; forcible oral copulation through future threats as alleged in count 2; and robbery as alleged in count 4. He was found not guilty on count 3. The jury found the weapons allegations to be true.

### Sentencing

For count 2, the court imposed the upper term of eight years. Reviewing the aggravating factors, the court stated at the sentencing hearing that appellant's crime "involved unspeakable violence, great bodily harm, [and] the threat of bodily harm," in addition to being "vicious" and "callous." The victim was said to be "particularly vulnerable" due to her "slight physiognomy." The court further noted that appellant was on probation or parole at the time of the crime for robbery, and that appellant "personally used a firearm in the commission of the crime." The court believed that the crime involved "planning" but chose to "disregard that as an aggravating factor."

Appellant was sentenced to 37 years four months to life, consisting of: 15 years to life for count 1; the upper base term of eight years enhanced by 10 years for count 2; and one-third the base term or one year enhanced by a term of

one-third the prescribed term or three years four months for count 4, all to run consecutively.[2] He was given 288 days of custody credit, and restitution and parole revocation fines were imposed pursuant to section 1202.4, subdivision (b) and section 1202.45.[3]

## Trial

The victim, Rita B., testified that on July 27, 2002, between 1:00 and 2:00 p.m., she went out for a walk on the bicycle trail that ran along the San Gabriel River. She first spotted appellant, wearing a blue shirt and dark pants, climbing over the fence that separated the path from a nearby backyard. He appeared to be walking away from her. A short time later, she heard angry shouting behind her. The words she heard were initially incomprehensible, but she came to understand that someone was saying "Turn around, bitch. Stop. Turn around, bitch. Look at me." She turned around and saw appellant pointing a gun at her. The gun was only about a foot from her face. He said he was going to shoot her and told her not to turn around. He forced her to walk backwards toward a freeway underpass. He kept telling her to keep walking and threatening to shoot her, and also kept telling her to look at him.

Once they were in a somewhat more secluded area, appellant told Rita to empty her pockets. She had a radio, and offered it to him. He told her to remove her clothing. She initially refused, but he put the gun to her head. He told her to get down on her knees and open her mouth or he would shoot her. He placed his penis in her mouth. She tried to pull away. Putting both his hands on her neck, he pulled her back towards him, propping the gun briefly against a nearby wall. He next told her to stand, and tried to put his penis inside her anally. He then led her further down toward the riverbed. He made her lie down and put his penis inside her vaginally. At that point, she was not looking at him and did not know whether the gun was in his hands or on the ground.

While the attack was going on, a man riding a bicycle on the path came within view. Appellant lay down and told Rita to sit on him, facing towards him. He smiled at the bicyclist and gave him a "thumbs up" sign. He told Rita he would shoot her if she said anything. She waived her hands behind her back, trying to signal to the bicyclist that something was wrong. When

---

[2] As is discussed below, the minute order and abstract of judgment conflict with the reporter's transcript, and shows a sentence of 16 months plus three years for the enhancement on count 4.

[3] Appellant was under 18 at the time, and was therefore remanded to juvenile authorities until age 21.

the bicyclist moved away, appellant got up and told Rita to stand up and get her clothes. She started to run one way down the path, and he ran the other way.

Rita immediately encountered a young couple on bicycles and told them she had been raped. She indicated appellant who could still be seen running away. The young man chased after appellant. The young woman called 911, and sheriff's deputies soon arrived. A few hours later, the deputies took Rita to view appellant, who had been placed in custody. She positively identified him as the attacker.

Steven Hernandez testified that he was riding his bicycle on the path on the day in question when he saw Rita sitting naked on top of an African-American man Hernandez could not identify. Rita waved her hand behind her back. Hernandez loudly said that what they were doing "wasn't right." A few moments later he saw the man running away. He appeared to have a long stick in his hand.

Brianne Gomez confirmed seeing Rita on the path in a frantic state on the day in question and calling 911 on her behalf. Her boyfriend, Oscar Castillo, testified that he chased after the person pointed out by Rita, and saw the man, whom he was able to identify as appellant, jump a fence.

Deputy John Steele took the information concerning where the assailant was last seen and set up a containment area. He observed fresh footprints going toward a particular residence's yard. Appellant was located at the residence, along with a rifle. He was wearing clothing that did not match the description given to the police, but clothing matching that description and Rita's radio were found inside the house. The footprints observed leading to the residence matched appellant's shoe size.

A nurse examined Rita and found injuries consistent with her description of the assault.

The defense presented no witnesses or evidence.

With respect to count 3, the jury was instructed that appellant was accused of having committed the crime of "unlawful oral copulation in violation of section 288a subdivision (c)(3) of the Penal Code," which was defined, in pertinent part, as follows: "Every person who participates in an act of oral copulation against the will of the victim by threatening to retaliate in the future against the victim or any other person and there is a reasonable possibility that the perpetrator will execute the threat, is guilty of the crime of unlawful oral copulation in violation of Penal Code section 288a subsection

(c) subdivision (3). . . . Threatening to retaliate means a threat to kidnap or falsely imprison or inflict extreme pain, serious bodily injury, or death. In order to prove this crime each of the following elements must be proved: (1) a person participated in an act of oral copulation with an alleged victim; and (2) the act was accomplished against the alleged victim's will by threatening to retaliate in the future against the alleged victim or any other person; and there was a reasonable possibility that the perpetrator would execute the threat."

In closing argument to the jury, the prosecutor stated in reference to count 2: "Count 2 . . . is a charge of oral copulation. . . . The elements are that a person participated in an act of oral copulation with an alleged victim . . . and this act was accomplished against her will by threatening to retaliate in the future against her, and there was reasonable possibility that the perpetrator would execute the threat." Concerning the latter element, the prosecutor stated: "[T]he second element has to do with the defendant making threats, a threat to retaliate in the future, with the reasonable probability that the perpetrator would execute the threat. With regard to the oral copulation, the threat in this case was [appellant] threatening to shoot [the victim]. You'll remember Rita said: [']I don't want to do this. I can't do this. I can't do it. No. Please, no.['] But the defendant pointed the gun at her and said: [']I'll shoot you. I'll shoot you. You do it now. Do it now, bitch. Do it now.['] This was the threat, the threat to retaliate, the threat to inflict bodily injury on her."

## DISCUSSION

### I

The sole original issue raised on appeal was whether the evidence was sufficient to support appellant's conviction for oral copulation accomplished by threat of future retaliation under section 288a, subdivision (c)(3). Appellant argued that his threat to shoot Rita could not be construed as a threat to retaliate *in the future*. Instead, it was an *immediate* threat that should have been charged under subdivision (c)(2). A review of the history of section 288a and the similar provisions of section 261, and their interpretation by the courts, establishes that the variance between the information and the facts proved at trial was, at most, harmless error.

Section 288a, subdivision (c) is divided into three subparagraphs. Subdivision (c)(3) provides: "Any person who commits an act of oral copulation where the act is accomplished against the victim's will by threatening to

retaliate[4] in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat, shall be punished by imprisonment in the state prison . . . ." The other two subparts of subdivision (c) make it a felony to participate in oral copulation with a person "under 14 years of age and more than 10 years younger than [the assailant]" (§ 288a, subd. (c)(1)) or to commit "an act of oral copulation when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison . . . ." (§ 288a, subd. (c)(2).)

The first modern version of section 288a, subdivision (c), contained no subparagraphs and simply provided that "[a]ny person who participates in an act of oral copulation with another person who is under 14 years of age and more than 10 years younger than he, or who has compelled the participation of another person in an act of oral copulation by force, violence, duress, menace, or *threat of great bodily harm*, shall be punished by imprisonment in the state prison for a period not less than three years." (Stats. 1975, ch. 877, § 2, p. 1958, italics added.)

A provision regarding threats of future injury was added in 1985. After the amendment, section 288a, subdivision (c) still contained no subparagraphs and stated: "Any person who participates in an act of oral copulation with another person who is under 14 years of age and more than 10 years younger than he or she, or when the act is accomplished against the victim's will by means of force, violence, duress, menace, or *fear of immediate and unlawful bodily injury* on the victim or another person or where the act is accomplished against the victim's will by *threatening to retaliate in the future* against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat shall be punished by imprisonment in the state prison for three, six, or eight years." (Stats. 1985, ch. 1085, § 3, pp. 3633–3634, italics added.) There was no imperative need for the amendment. Prior to 1985, the courts had already interpreted the term "threat of great bodily harm" expansively to include threats against third parties, and threats of future harm. (See, e.g., *People v. La Salle* (1980) 103 Cal.App.3d 139, 147 [162 Cal.Rptr. 816], disapproved in part on other grounds in *People v. Kimble* (1988) 44 Cal.3d 480 [244 Cal.Rptr. 148, 749 P.2d 803] [victim testified that because of defendant's "tone of voice, the way he spoke to her, and the way he treated her daughter" that he would harm the daughter if she did not accede to his

---

4 " '[T]hreatening to retaliate' " is defined in the statute to mean "a threat to kidnap or falsely imprison, or to inflict extreme pain, serious bodily injury, or death." (§ 288a, subd. (*l*).)

demands]; *People v. St. Andrew* (1980) 101 Cal.App.3d 450, 454 [161 Cal.Rptr. 634] [victim, a mental patient, feared her assailant, a hospital attendant, would have her restrained in her bed or placed in a locked room]; *People v. Cassandras* (1948) 83 Cal.App.2d 272, 276 [188 P.2d 546], disapproved in part on another ground in *People v. Collins* (1960) 54 Cal.2d 57 [4 Cal.Rptr. 158, 351 P.2d 326] [defendant told victim that, unless she submitted, he would have her arrested as a prostitute and that the police would take her children away].)

In 1998, section 288a was put in its present form, with three separately numbered subparagraphs. In enacting this amendment, the Legislature stated: "The amendments to Sections 286, 288a, and 289 of the Penal Code, which number certain subdivisions with paragraphs, are intended to be technical amendments only and are not intended to make any substantive changes to those sections." (Stats. 1998, ch. 936; see *id.*, §§ 5, 25.)

The problem of imprecision in pleading under the various clauses of the forcible oral copulation statute and the similarly worded forcible rape statute, long predated this change, and have been repeatedly addressed by the courts. In *People v. Craig* (1941) 17 Cal.2d 453 [110 P.2d 403], for example, the defendant was charged with forcible rape in one count and rape based on the age of the victim in another, although only a single act of intercourse had occurred. He was found guilty and sentenced on both counts. In modifying the judgment to reflect one conviction and punishment, the court stated: "Under [section 261], but one punishable offense of rape results from a single act of intercourse, although that act may be accomplished under more than one of the conditions or circumstances specified in [the statute's] subdivisions. These subdivisions merely define the circumstances under which an act of intercourse may be deemed an act of rape; they are not to be construed as creating several offenses of rape based upon that single act. . . . The victim was not doubly outraged, once because she was forcibly attacked and once because she was under 18 years of age." (*Id.* at p. 455.)

From this holding derived a rule that "regardless of the subsection alleged, if the proof brings the case within any of the subsections of section 261, the offense of rape has been successfully proved by the prosecution" and "[t]he fact that the information was framed under the wrong subdivision of the section is immaterial." (*People v. Cassandras, supra,* 83 Cal.App.2d at p. 276; accord, *People v. Tollack* (1951) 105 Cal.App.2d 169, 172 [233 P.2d 121] ["Regardless of the subdivision alleged in the information, if the evidence brings the case within any one of the subdivisions of section 261 the offense of rape has been established"].)

The Supreme Court abrogated that rule in *People v. Collins, supra,* 54 Cal.2d 57, substituting a less formulistic one based on more familiar concepts of notice and prejudice. Defendant there was charged with rape by force and violence, but was ultimately convicted of rape based on the age of the victim. The Supreme Court stated: "An accused should be advised of the charge against him in order that he may have a reasonable opportunity to prepare and present his defense. When the information charges rape committed under the circumstances stated in a particular subdivision of section 261 and the prosecution offers proof of different circumstances which bring the act under another subdivision, the accused may be taken by surprise unless before the trial he has received notice of the possibility of such a variance by other means than the information." (*Id.* at p. 59.) In other words, "[t]he decisive question . . . is whether the variance was of such a substantial character as to have misled defendants in preparing their defense." (*Id.* at p. 60.) In the case before it, there was no prejudice and the variance was deemed "immaterial" because "[n]ot only was it proved at the preliminary hearing that the prosecuting witness was 15 years of age, but the attorney for one of the defendants then expressed the view that the evidence tended to show statutory rape only. Moreover, it is not claimed that if [statutory rape] had been expressly alleged defendants would or could have disputed the age of the prosecuting witness." (*Ibid.*)

*Collins* was limited in *People v. Lohbauer* (1981) 29 Cal.3d 364 [173 Cal.Rptr. 453, 627 P.2d 183]. There, the court was asked to affirm a conviction for the misdemeanor offense of entering a noncommercial dwelling without the consent of the owner, when the defendant had been charged with burglary. Citing the "fundamental" rule that " '[w]hen a defendant pleads not guilty, the court lacks jurisdiction to convict him of an offense that is neither charged nor necessarily included in the alleged crime,' " the court held that "[b]ecause [the misdemeanor violation] was neither charged nor necessarily included within the burglary charge, defendant's conviction of the lesser offense may not be sustained 'whether or not there was evidence at his trial to show that he had committed that offense.' " (*Id.* at pp. 368–369, quoting *In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5].)

The respondent in *Lohbauer* claimed that *Collins* permitted the conviction to be upheld because it stood for a rule that *any* variance between the charged offense and the offense for which the defendant was convicted was immaterial unless the defendant was " 'misled to his prejudice and prevented from preparing an effective defense.' " (*People v. Lohbauer, supra,* 29 Cal.3d at pp. 369–370.) The Supreme Court explained that *Collins* should not be read so broadly: "In that case multiple defendants were charged with rape in violation of former section 261, *subdivision 3,* prohibiting sexual intercourse

accomplished with force or violence. They were found guilty of rape in violation of former section 261, *subdivision 1*, prohibiting sexual intercourse with a female under the age of 18. We affirmed the convictions, concluding that these subdivisions of the former statute 'do not state different offenses but merely define the different circumstances under which an act of intercourse constitutes the crime of rape.' " (*Id.* at p. 371, quoting *People v. Collins, supra*, 54 Cal.2d at p. 59.) Because the *Collins* holding was based on the conclusion that "rape was one crime" it did not undermine the requirement that the defendant either be convicted of the offense charged or a lesser included offense. (*Id.* at p. 372.) The court did not, however, overrule *Collins*, despite the Chief Justice's plea that it do so. (*People v. Lohbauer, supra*, 29 Cal.3d at p. 373 (conc. opn. of Bird, C. J.).)

The continued viability of *Collins* was recently reaffirmed in *People v. Maury* (2003) 30 Cal.4th 342 [133 Cal.Rptr.2d 561, 68 P.3d 1], where the defendant was convicted of multiple rapes and murders. With respect to one of the rapes, the defendant was charged with having committed it " 'by means of force and fear of immediate and unlawful bodily injury.' " (*Id.* at p. 427.) The jury was instructed that it could find the defendant guilty of this charge if it determined that he had accomplished an act of sexual intercourse " 'by means of force, *violence*, or fear of immediate and unlawful bodily injury.' " (*Ibid.*, italics added.) This led the defendant to complain of violation of "his Sixth Amendment right to notice and his right to due process" because "the jury might have convicted him of an uncharged offense, rape by means of violence." (*Ibid.*) The court disagreed with this analysis, citing *Collins* for the proposition that "contrary to defendant's assertion, rape by means of violence is *not* a different offense from rape by means of force or fear; these terms merely describe different circumstances under which an act of intercourse may constitute the crime of rape." (*Ibid.*) The court further noted that defendant had failed to show or assert prejudice and that "the variance was not of such a substantial character as to have misled defendant in preparing his defense," again citing *Collins*. (*Ibid.*) With regard to prejudice, the court specifically noted: "[I]n finding defendant guilty of rape, the jury found [the victim's] testimony credible. That evidence equally supported findings of rape by means of force, violence, or fear. It is inconceivable that the jury would have found defendant guilty of rape by means of violence, but not by means of force or fear." (*Id.* at p. 428.)

█ It follows from the Supreme Court's holdings in *Collins* and *Maury*, and the Legislature's statement that it meant no substantive change in the law when it added subparagraphs to section 288a in 1998, that an error in specifying the correct subparagraph of section 288a, subdivision (c), in the information is not necessarily fatal. Because forcible oral copulation is one

offense whether committed by immediate force or by threat of future retaliation, imprecision of the type alleged here is not equivalent to the situation where the defendant is convicted of a crime not charged in the accusatory pleading. Instead, where the prosecution fails to assert the correct subparagraph of section 288a, the issue is whether the defendant was misled or can show prejudice. We do not see any reason to believe that appellant was misled or prejudiced here. The prosecutor informed the jury, without objection from defense counsel, that the "threat to retaliate" element of the charge was established by appellant pointing the gun at the victim and saying: "[]I'll shoot you. I'll shoot you. You do it now. Do it now, bitch. Do it now.[]" The defense argument was based entirely on the possibility of mistaken identity due to appellant being captured away from the scene of the assault, wearing different clothing, and the lack of a formal lineup. In finding appellant guilty on count 2, the jury clearly believed that appellant was the assailant and that Rita was forced to orally copulate him under threat of being shot. The possibility that the jury may have been misled concerning whether the crime required the threatened shooting to occur immediately or sometime in the future does not establish that appellant was convicted of the wrong crime or otherwise prejudiced by possible error in the charging allegations.

Moreover, it is not entirely clear that there was error. One court has held that the dividing line between threat of future harm and fear of immediate injury may be difficult to distinguish and some types of threats may qualify as either. In *People v. Ward* (1986) 188 Cal.App.3d 459, 468 [233 Cal.Rptr. 477], the court was faced with the converse of the issue presented here. There, the defendant was convicted of ongoing lewd conduct with a minor accomplished through fear of immediate harm in violation of section 261, subdivision (2). The evidence indicated that the threats had been to " 'take [the girl's] mother out' " if the girl did not comply. (188 Cal.App.3d at p. 463.) On appeal, defendant contended that, because the mother was not present in the room when the illicit activities occurred, the threatened harm would have had to take place in the future, and thus fell under section 261, subdivision (a)(6), proscribing sexual acts accomplished by "threatening to retaliate in the future against the victim or any other person."

The court viewed the "critical issue" as being "whether the victim's submission was a reasonable reaction to the defendant's threat, express or implied." (*People v. Ward, supra*, 188 Cal.App.3d at p. 466.) By adding a specific provision covering threats to retaliate in the future, "the Legislature recognized that under the usual circumstances surrounding sexual assaults, the victim is unable to use [discrete] mental processes to distinguish between 'immediate' action and future retribution." (*Ibid.*) The law does not protect against unfounded charges by insisting that the victim predict whether the threat is of immediate or future harm, but by "its requirement that the victim act upon an objectively reasonable basis in concluding there is a possibility

the perpetrator will execute the threat if the victim does not submit." (*Id.* at pp. 466–467.) In the case before it involving a young girl, "[a] jury could conclude that, in the girl's mind, as a reasonable person of that age, only her submission to these ongoing sexual attacks would prevent her mother's immediate death. At the minimum, the temporal aspect of the fear was at that point in the spectrum of time where 'immediate' and 'in the future' arguably become merged and indistinguishable." (*Id.* at p. 468.)

Here, the facts indicate that the victim's perceived immediacy of the threat may have been disrupted by appellant's actions in putting down the gun and grabbing the victim with both hands or by the presence of the bicyclist/witness. But whether the victim understood the threat to "shoot" her unless she "d[id] it now" to be a threat of immediate action or future violence, there is no question that it was objectively reasonable for her to believe appellant intended to do her harm unless she went along with his demands.

██ In reviewing a challenge based on sufficiency of the evidence, the appellate court is to view the record in the light most favorable to the judgment to determine whether it discloses evidence which is reasonable, credible, and of solid value to support the trier of fact's decision. (*People v. Morales* (1992) 5 Cal.App.4th 917, 925 [7 Cal.Rptr.2d 358].) We must presume in support of the judgment the existence of every fact the trier could reasonable deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].) Unless it is clearly shown that "on no hypothesis whatever is there sufficient substantial evidence to support" the jury's verdict, the reviewing court will not reverse. (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429 [180 Cal.Rptr. 391].) For the reasons discussed, we conclude the jury's verdict on the forcible oral copulation count was supported by evidence and reasonable inferences.

## II

██ In a supplemental brief, appellant contends that the trial court committed sentencing error under *Blakely, supra,* 542 U.S. 296, and *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348], because it imposed the upper term after making its own factual findings, separate from the jury's, concerning aggravating and mitigating factors. Appellant further contends that the court's imposition of consecutive sentencing was invalid under these authorities. The United States Supreme Court essentially held in *Blakely* and *Apprendi* that facts, other than a prior conviction, that increase the maximum penalty for a crime must, if not admitted by the defendant, be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt.

■ The question of whether California's sentencing scheme violates the *Blakely/Apprendi* rule was resolved by our Supreme Court in *People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534], where the following issue was raised: "[W]hether a defendant is constitutionally entitled to a jury trial on the aggravating factors that justify an upper term sentence or a consecutive sentence." (*Id.* at p. 1244.) The Supreme Court concluded that "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial." (*Ibid.*) On remand from the Supreme Court, we must and do follow that decision.

## III

There is one final issue to be addressed. While this appeal was pending, the trial court entered two nunc pro tunc orders altering appellant's sentence by (1) correcting an error in the minute order and abstract of judgment that incorrectly stated that the term imposed by the trial judge for count 4 (the robbery) was one year four months instead of one year and (2) increasing the count 4 enhancement from three years four months (or one-third the prescribed term) to 10 years. The result was to increase appellant's prison term from 37 years four months to life to 44 years to life.

In his second supplemental brief, appellant contends that the change in the base term was a proper correction of a clerical error to reflect the true sentence for the robbery imposed by the judge at the sentencing hearing. With respect to the increase in the enhancement, however, appellant contends that the increase was erroneous because the robbery sentence was the subordinate term, and the court's original decision to impose one-third the prescribed term for the enhancement to the robbery was the correct one. In its second supplemental letter brief, respondent does not dispute either of these contentions. Respondent concedes that the court intended to sentence appellant to the base term of one year on count 4. Respondent points out, however, that the overall sentence on count 4 was correct because, although the minute order and abstract of judgment mistakenly added four months to the base term, these documents described the enhancement as three years rather than the three years four months the judge imposed as reflected in the reporter's transcript.

Respondent further concedes that "any section 12022.53, subdivision (b) enhancement imposed on count IV is subject to the one-third requirement of section 1170.1" and that "the firearm enhancement imposed [for count 4] should be 3 years and 4 months." Accordingly, respondent admits the nunc pro tunc increase in the enhancement on count 4 was in error. These matters must be remanded for correction.

## DISPOSITION

The judgment is reversed as to the sentence on count 4 only, and the matter remanded so that the sentence and abstract of judgment can be corrected to reflect that the base term for count 4 is one year and the enhancement is three years four months. In all other respects, the judgment is affirmed.

Epstein, P. J., and Hastings, J., concurred.

On November 7, 2005, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 4, 2006, S139154.