[Crim. No. 34768. Second Dist., Div. Four. Mar. 5, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
VAUGHN ANTHONY LA SALLE, Defendant and Appellant.

COUNSEL

Vaugh Anthony LaSalle, in pro. per., and Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

JEFFERSON (Bernard), J.*—By information, defendant was charged in counts I and II with the felony offenses of simple kidnaping in violation of Penal Code section 207. With respect to count II, it was alleged that defendant inflicted great bodily injury upon the victim within the meaning of Penal Code section 12022.7. In count III, defendant was charged with the felony offense of rape, a violation of Penal Code section 261, subdivision 3. In count IV, defendant was charged with the felony offense of grand theft from the person, in violation of Penal Code section 487, subdivision 2.

Defendant entered pleas of not guilty and was tried by a jury. During the trial, count IV was dismissed on motion of the People. Defendant was found guilty of the two offenses of kidnaping and of rape as charged. Defendant was sentenced to state prison with the sentence on count III made to run concurrently with that on count I. The sentence on count III was ordered stayed, the stay to become permanent upon service of the sentences on counts I and II. Defendant has appealed from the judgment.

Defendant raises the following contentions on appeal: (1) that there was insufficient evidence to support his conviction; (2) that the court erred in instructing the jury in the language of CALJIC instruction No. 2.71; and (3) that the prosecutor failed to comply with the defense request for discovery.

*Assigned by the Chairperson of the Judicial Council.

# I

## *A Summary of the Facts*

At noon on May 28, 1978, Christy M. and her daughter, Christina, two and one-half years of age, were walking across the street at the intersection of La Brea and San Vicente Streets in Los Angeles. Defendant, driving a station wagon, slowed down and spoke to Christy through the car passenger window and asked her if she wanted a ride. She said "[n]o" and continued walking. After reaching the curb on the other side of the intersection, Christy let go of her daughter's hand and continued walking with her daughter slightly behind her. Defendant spoke to Christy a second time, asking her if the pavement was hot; she responded that it was not, and continued walking. About 10 seconds thereafter, she realized that her daughter was not behind her any longer; she turned and saw only her daughter's legs protruding from the passenger window of defendant's car. Defendant was leaning toward the passenger side, helping the child into the car.

Christy walked over to the car and leaned in the window. Defendant said: "If you want her, you have to get in the car with me." Christy complied, and defendant began driving them around Beverly Hills. During this time, he instructed the child to get into the back seat of the car. At Burton Way and Clark Street, defendant parked his car in an alley between two buildings; he put his hand on Christy's leg and tried to pull her over to his side of the car. She resisted. Christina began to cry, and defendant said that she "would have to go." Defendant opened the back door of the car and told the child to get out and play. He closed the door, got back in the car, and told Christy to remove her pants. She tried to comply, and defendant attempted to have intercourse with her on the front seat, but because there was not enough room, he was unable to do so.

Defendant took hold of the victim's wrists and told her to get into the back seat of the station wagon. She complied, and defendant had intercourse with her there. Defendant and Christy then returned to the front seat of the car and defendant began to drive. Christy asked him to help her find her daughter; defendant drove a short distance, then let her out of the car. When she left the car, she no longer had her wallet with her. Christy memorized defendant's license plate as he drove away, and began searching for her child. During the search, she borrowed a dime

from a pedestrian, called the police, and then found her daughter while waiting for the police to arrive.

Christy gave the police a description of defendant and of the events; she described defendant's clothing and told the police that there was a campaign poster in the back seat of the car, a container on the floor of the front seat to hold a drinking cup, and stacks of blue papers in the back seat. She was then taken to the hospital for examination; vaginal smears taken showed the presence of spermatozoa.

When the police arrived in response to Christy's call, she was found kneeling down holding her child, staring into space; on arrival at the hospital, she became hysterical and was put into leather physical restraints.

Defendant was arrested at his home on May 28, at approximately 7 p.m. He was wearing the same clothing which had been described by Christy. A campaign poster and campaign flyers were visible on the back floorboard of his car. A cup holder was found on the front floor of the car. A check stub with Christy's full name was found on the floor of defendant's car, and Christy's fingerprints were found inside the front right window of the car.

After waiving his *Miranda* rights, defendant told the police he had no knowledge of the crime. On May 29, during a police interview, defendant again waived his *Miranda* rights and denied all charges. He gave an account of his day on May 28, explaining that he was with friends at a picnic from early morning until about 7 p.m. at night. He stated that he had his car with him, and that no one else drove the car that day.

Defendant's defense was an alibi. Two friends testified that they had been with him at a picnic all day of the day in question.

## II

*Sufficiency of the Evidence to*
*Sustain Defendant's Conviction*

Defendant contends that the evidence is insufficient to support any of the three convictions.

## A. ▮ *The Kidnaping of Christy's Daughter*

Defendant asserts that the testimony of Christy concerning the kidnaping of her daughter is inherently improbable and should have been rejected by the trier of fact in its entirety. With respect to her testimony that the passenger window was rolled halfway up at the time the child entered the car, defendant argues that he would need arms at least 10 feet long in order to sit in the driver's seat and lean over and grab a little girl off the street and bring her through the window. Moreover, it is asserted that it would be impossible for a three-year-old child to be pulled through a car window that was rolled up halfway. Defendant also points out the unlikely factor that the child did not scream or cry out during this event. He also points out that Christy testified that defendant locked the car doors and windows electrically after she got in, although the evidence established that the car did not have power windows or doors.

With respect to the events surrounding the entrance of the child into defendant's car, we note that Christy testified twice that the passenger window was down at the time the child entered the car, and later stated that the window was halfway up. She also testified that when she got into the car, she saw that her daughter was eating candy, which she had not had immediately before that. The child's silence during this event is reasonably explainable by the fact that she was lured, not yanked, into defendant's vehicle.

In analyzing evidence which is claimed to be inherently improbable, we are mindful of the observations of the California Supreme Court in *People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267]. The *Thornton* court stated: "'Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]'"

It is manifest in the case before us that the mother's testimony is not inherently improbable. The events testified to are not physically impossible. Any conflicts in Christy's testimony were resolved in her favor by the trier of fact. The jury was entitled to reject some parts of her testimony while accepting the remainder. The jury was free to "conclude that the more vital portions of her testimony were true." (*Thornton, supra*, 11 Cal.3d 738, 755.)

B. ■ *Was There Consent to Preclude a Kidnaping of Christy M.?*

Defendant correctly sets forth the legal principle that "whereas the two special types of kidnaping (transportation out of state for sale into slavery; unlawful transportation into state for any purpose) can be accomplished by means of fraud, a general act of kidnaping—such as here charged—can only be accomplished by the use or threat of force." (*People* v. *Rhoden* (1972) 6 Cal.3d 519, 526-527 [99 Cal.Rptr. 751, 492 P.2d 1143].) It is defendant's position that, at best, Christy M. was induced to enter his vehicle by the fraudulent misrepresentation that she would be able to get her daughter back, and since no force or threat was used by defendant, the charge of kidnaping Christy M. must be reversed.

But we do not so construe the facts of this case. Defendant's statement, "[i]f you want her, you have to get in the car with me," was reasonably subject to an interpretation of constituting a threat to harm or kidnap the child unless the mother complied.

Christy testified that she got into the car—not voluntarily—but because she knew defendant could have driven away with her daughter. She also testified that although she was afraid to get into the car, she was more afraid not to get in, because of what could happen to her daughter; that she felt she had no choice but to cooperate. The jury was entitled to conclude that this was not a case of inducement by fraud or deceit, but one wherein the victim was *forced* to consent to defendant's demands.

Additionally, even had the initial entry into the car been voluntary, the act became a kidnaping by force when defendant refused to allow Christy and her daughter to get out of the car. Christy stated that she told defendant she had to go home to her husband, but that defendant

ignored her and continued to drive. It appears from the evidence that Christy could not have extricated herself and her daughter from a moving vehicle, and when defendant finally brought the car to a stop, he parked it so close to a building on the right, that Christy was unable to open the passenger door. Here, therefore, the kidnaping legal rule comes into play that "'[w]here the victim has at first willingly accompanied the accused, the latter may nevertheless be guilty of kidnaping if he subsequently restrains his victim's liberty by force and compels the victim to accompany him further.'" (*People* v. *Camden* (1976) 16 Cal.3d. 808, 814 [129 Cal.Rptr. 438, 548 P.2d 1110].)

C.  ■  *Rape Conviction—Was There Sufficient Evidence of Prevention of Resistance by Threats of Immediate Harm?*

The offense of rape of which defendant was convicted is described in Penal Code section 261, subdivision 3, as follows: "Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either of the following circumstances:... [¶] 3. Where she is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution,..."

Defendant contends that Christy consented to engage in sexual intercourse with him; that he made no express or implied threats which could have put her in reasonable fear of great bodily harm, and that there is no evidence that she resisted his advances.

Christy offered the following explanation of her compliance with defendant's sexual demands: "Because I was thinking of where my daughter was, and I was concerned about where she was; and I just felt like if whatever he wanted to do, that the quicker he did it and it was done with, that I could get out and find her. I didn't want to argue with him or get him mad to where he might hurt me."

She stated that because of defendant's tone of voice, the way he spoke to her, and the way he treated her daughter, she was afraid he would harm her (Christy) if she did not accede to his demands. She said that her main concern throughout the ordeal was for her daughter's safety. This testimony establishes that she did not freely, voluntarily, or willingly consent to have sexual intercourse with defendant. But not every nonvoluntary consent to sexual intercourse

constitutes rape. Penal Code section 261 provides that a rape is perpetrated where the victim does *not* resist only if she is prevented from resisting "by threats of great and immediate bodily harm." (Pen. Code, § 261, subd. 3.)

It is well established, however, that the threats required by the statute need not be express. The mere fact that defendant here did not put into words that great and immediate bodily harm would befall the mother or child if the mother did not cooperate, does not mean that the crime of rape was not committed. "We are unable to agree with the view that there can be no threat within the meaning of this statute unless it is expressed in words or through the exhibition of a gun, knife or other deadly weapon. A threat may be expressed by acts and conduct as well as by words." (*People* v. *Flores* (1944) 62 Cal.App.2d 700, 703 [145 P.2d 318]; *People* v. *Winters* (1958) 163 Cal.App.2d 619, 623 [329 P.2d 743].)

The evidence in the case before us establishes that defendant put his hand on Christy's leg and tried to pull her over to his side of the car; that he told her that her child would "have to go"; that he grabbed hold of her wrists when he put her into the back seat of the car, and kept a tight grip on her wrists while demanding that she have sex with him. Christy indicated that she did not cry out or fight back, because she was afraid that if she did so, defendant would hurt her, and then she would be unable to get to her daughter. The instant case is not unlike that of *People* v. *Cassandras* (1948) 83 Cal.App.2d 272 [188 P.2d 546], in which the court found sufficient threats to justify the victim's lack of resistance, and upheld a rape conviction where defendant took the victim to a hotel on a pretext of obtaining employment for her, and, when she was reluctant to enter the room, pushed her, telling her she was not going to get out until she undressed and went to bed with him. The victim in that case testified that she was scared he would hurt her and that she didn't care about being hurt, but wanted to get home with her kids. The court held that the evidence was reasonably susceptible of the interpretation that threats to do great bodily harm were made, and that the consent of the victim was secured as a result of such threats. The court made the observation that ""[t]he courts no longer follow the primitive rule that there must be resistance to the utmost." [Citation.] . . ."The resistance required in each case depends upon the circumstances of that case, such as the relative strength of the parties, the uselessness of resistance, the degree of force manifested and other factors. The resistance of the prosecutrix need only be such as to make

nonconsent and actual resistance reasonably manifest."'" (*Cassandras, supra*, 83 Cal.App.2d 272, 278.)

"The prevailing rule in California is that threats may be inferred from conduct [citations], and that the victim need only make such resistance as will reasonably manifest her refusal to consent to the act. [Citations.] While generally the woman has the power to determine for herself the extent to which she feels she can safely resist [citation], her conduct must always be measured against the degree of force manifested and each case must be resolved on all of the circumstances present. [Citations.]" (*People* v. *Hunt* (1977) 72 Cal.App.3d 190, 194 [139 Cal.Rptr. 675].)

We hold that there is sufficient evidence in the instant case to support the conclusion of the trier of fact that defendant's conduct was tantamount to an implied threat of great bodily harm to Christy and that her lack of resistance was thus justified. In so holding, we have analyzed the evidence under the standard set forth in *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781]. We interpret *Jackson* as mandating that, upon a contention being made that the evidence is insufficient to sustain a conviction, the appellate court must review *all* of the evidence in the case, including the defense evidence as well as the prosecution evidence, to determine whether a rational trier of fact could find that each element of the offense charged has been established beyond a reasonable doubt. Upon a review of all the evidence, a rational trier of fact could easily have found proof of defendant's guilt of each crime charged beyond a reasonable doubt.

## III

### *CALJIC Instruction No. 2.71— Admission Defined*

■ Defendant asserts as error the giving of CALJIC instruction No. 2.71.[1] Defendant correctly asserts that CALJIC No. 2.71 is ambiguous in the way in which it defines a defendant's admission. The

---

[1]CALJIC instruction No. 2.71 provides as follows: "A statement made by a defendant other than at his trial may be an admission. [¶] An admission is a statement by a defendant, which by itself is not sufficient to warrant an inference of guilt, but which tends to prove guilt when considered with the rest of the evidence. [¶] You are the exclusive judges as to whether an admission was made by the defendant and if the statement is true in whole or in part. If you should find that such statement is entirely

ambiguity comes from the definition that "[a]n admission is a statement by a defendant, which by itself is not sufficient to warrant an inference of guilt, but which tends to prove guilt when considered with the rest of the evidence."

The vice in this definition of an "admission" is that it does not distinguish between a statement of a defendant that constitutes a *hearsay* statement as an admission and a statement of a defendant that is non-hearsay and, hence, is *not* an admission. It is only when a party's statement is introduced to prove the truth of the matter stated that it is properly considered hearsay evidence and becomes admissible against the party under the exception to the hearsay rule for the personal admission of a party. (Evid. Code, § 1220.) The innate concept of a party's "admission" is that it is a *hearsay* statement which avoids the exclusionary rule because it falls within the exception to the hearsay exclusionary rule for a party's statement—offered against the party to prove "the truth of the matter stated." (Evid. Code, § 1200, subd. (a).)

If evidence of a defendant's statement is *not* offered against him to prove the truth of the statement, its admissibility must be based on the circumstantial-evidence-reasoning process such as a statement reasonably leading to an inference of defendant's state of mind of consciousness of guilt and thence to the fact that he had acted in conformity with such state of mind and committed the offense charged against him. (See *People* v. *Rubio* (1977) 71 Cal.App.3d 757 [139 Cal.Rptr. 750].)[2]

CALJIC instruction No. 2.71 makes it appear that *every* statement made by a defendant constitutes an "admission" if the statement "tends

---

untrue, you must reject it. If you find it is true in part, you may consider that part which you find to be true. [¶] Evidence of an oral admission of the defendant ought to be viewed with caution."

[2]The CALJIC instruction which governs this situation of a defendant's out-of-court statements is CALJIC No. 2.04 (1979 revision) which provides: "If you find that a defendant [attempted to] [did] persuade a witness to testify falsely or [tried] to fabricate evidence to be produced at the trial, such attempt may be considered by you as a circumstance tending to show a consciousness of guilt. However, such attempt is not sufficient to prove guilt and its weight and significance, if any, are matters for your determination."

to prove guilt when considered with the rest of the evidence." But without further explanation, a jury cannot be expected to know what kind of a defendant's statement constitutes an "admission" which tends to prove defendant's guilt. To remove this ambiguity, CALJIC No. 2.71 should be amended so that the second sentence would correctly define the nature of an admission as a defendant's hearsay statement offered for its truth.

The following would constitute the kind of clarification needed for CALJIC No. 2.71: "A statement made by a defendant other than at his trial may be an admission. [¶] A statement by a defendant is an admission whenever the matter stated in the statement, if true, does not, by itself, disclose his intentional participation in the criminal act for which he is on trial and his guilt of that crime, but does tend to prove his guilt when considered with the rest of the evidence. [¶] You are the exclusive judges as to whether an admission was made by the defendant and if the statement is true in whole or in part. If you should find that such statement is entirely untrue, you must reject it. If you find it is true in part, you may consider that part which you find to be true. [¶] Evidence of an oral admission of the defendant ought to be viewed with caution."[3]

In the case at bench, a portion of defendant's pretrial statements constituted a hearsay statement—relevant for its truth. Thus defendant told Officer Olson that he, the defendant, was the only person who had driven his car on the date of the crimes. This statement was relevant for its truth since the prosecution's evidence that Christy had been in the vehicle with defendant, the driver, and the events that transpired there, tended to establish defendant's guilt of the kidnaping and rape charges.

---

[3]This suggested amendment of CALJIC No. 2.71 should also be included in CALJIC No. 2.70 (1979 revision) which now reads: "A statement made by a defendant other than at this trial may be an admission or a confession. [¶] An admission is a statement by a defendant, which by itself is not sufficient to warrant an inference of guilt, but which tends to prove guilt when considered with the rest of the evidence. [¶] A confession is a statement by a defendant which discloses his intentional participation in the criminal act for which he is on trial and which discloses his guilt of that crime. [¶] You are the exclusive judges as to whether an admission or a confession was made by the defendant, and if so, whether such statement is true in whole or in part. If you should find that any such statement is entirely untrue, you must reject it. If you find it is true in part, you may consider that part which you find to be true. [¶] Evidence of an oral admission or oral confession of the defendant ought to be viewed with caution." The suggested new definition of an "admission" would then be consistent with the definition of a "confession" set forth properly in CALJIC No. 2.70 as a hearsay statement because introduced for the truth of the matter stated in the statement.

But other statements by defendant to Officer Olson, introduced in evidence, were exculpatory in nature and obviously not introduced pursuant to the hearsay exception for a party's admission. These other statements of defendant set forth that defendant had been to a picnic at a park all day on the date in question; that the only persons who had been in his car that day with him were a friend Bobby, whose last name he did not remember, a Bobby McGee and a female friend, Frances. These exculpatory statements could have a *relevant nonhearsay* purpose to help establish the prosecution's case against defendant *only if defendant had testified as a witness and they were inconsistent with his testimony.*

Where an inconsistency appears between a defendant's testimony and his prior statements, it may reasonably be inferred that defendant has deliberately falsified on both occasions, and that from the *making* of such false statements, it would be reasonable for the jury to draw an inference that defendant possessed a state of mind of consciousness of guilt, and that such state of mind reasonably leads to another inference —that defendant had acted in conformity with his consciousness-of-guilt state of mind and had committed the crimes charged against him. (See *People* v. *Thomas* (1979) 96 Cal.App.3d 507 [158 Cal.Rptr. 120]; *People* v. *Morgan* (1978) 87 Cal.App.3d 59 [150 Cal.Rptr. 712].)[4]

In the case at bench, defendant did not testify. Neither did he make any objection to the introduction into evidence of his exculpatory statements to Officer Olson. The trial court gave no instruction which would have authorized the jury to consider that defendant's exculpatory statements could be considered as relevant *nonhearsay* statements to which CALJIC instruction No. 2.71 would have no application. Since a portion of defendant's statements to Officer Olson was admissible against defendant under the exception to the hearsay rule for a party's admission, and the remaining statements were exculpatory in character, defendant could not have been prejudiced by the trial court's giving of

---

[4]The jury instruction which is appropriate for a defendant's statement that is exculpatory in nature but is relevant nonhearsay evidence because of its inconsistency with *defendant's testimony* which thus leads to an inference of consciousness of guilt is CALJIC instruction No. 2.03 (1979 revision). This instruction provides: "If you find that before this trial [a] [the] defendant made false or deliberately misleading statements concerning the charge upon which he is now being tried, you may consider such statements as a circumstance tending to prove a consciousness of guilt but it is not sufficient of itself to prove guilt. The weight to be given to such a circumstance and its significance, if any, are matters for your determination."

CALJIC instruction No. 2.71 in spite of its ambiguous and misleading nature.

## IV

### *The People's Failure to Comply With Discovery*

■ Defendant asserts error in the court's denial of his motion to strike the rebuttal testimony of Officer Olson. Officer Olson testified that, on the previous day, he had had a conversation in the district attorney's coffee lounge with Clarence Spurlock. Spurlock was a witness who had testified for the defense. Officer Olson testified to the contents of that conversation and to the effect that he had made some notes of it on a paper towel. He did not make a formal report.

After cross-examination, defense counsel moved to strike the officer's testimony on the ground that he had not been provided with a copy of the notes, nor did he know of their existence prior to the officer's testimony, in spite of an outstanding defense request for discovery of statements of witnesses—a request the prosecution had agreed to honor. Defense counsel did know, however, prior to Officer Olson's rebuttal testimony, that the officer had talked with Spurlock the previous morning. Defendant contends that the testimony of the officer completely destroyed Spurlock's credibility; hence, it was prejudicial error for the court to deny his motion.

While it may be true that the prosecutor should have provided defense counsel with a copy of the officer's notes of the conversation (see *People* v. *Carter* (1957) 48 Cal.2d 737, 752 [312 P.2d 665]); "[t]he burden is on [ ] [the appellant] to establish prejudice on the failure to comply with a discovery order." (*People* v. *Reyes* (1974) 12 Cal.3d 486, 502 [116 Cal.Rptr. 217, 526 P.2d 225].) Our review of Spurlock's testimony in this case leads us to conclude that the credibility of Spurlock was effectively made suspect by Spurlock's own testimony and needed no assistance from Officer Olson.

Testifying as an alibi witness for the defendant, Spurlock first stated that he first saw defendant on the date in question at 8 a.m. when he arrived at Ladera Park for a family picnic. He said that defendant did not bring anyone with him. He also testified that he did not see defen-

dant arrive, and did not see who arrived with him. He admitted, however, that he told Officer Olson, two days after the event, that defendant had arrived with Rolanda, his fiancee. Spurlock also stated that he fell asleep at the picnic and napped from 11 until approximately 1, early afternoon. He saw defendant at the picnic when he awoke, and that defendant stayed at the picnic until it ended at 5 p.m. At another point, Spurlock testified that defendant left in the early afternoon, about an hour after Spurlock awoke from his nap, and did not return.

On rebuttal, Officer Olson testified that, when he interviewed Spurlock on May 30, two days after the event, Spurlock said that defendant had arrived at the picnic between 11 and 1, with a friend, Bobby McGee. But on February 7, 1979, the day before Olson testified, Spurlock had said to Olson that defendant arrived at the picnic between 6 and 6:30 a.m. with Rolanda. It is to be noted that defendant was aware of the May 30 statements of Spurlock through the police report which had been provided to defendant.

It is our view that, under the circumstances, defendant suffered no prejudice from the failure of the prosecution to provide him with the paper towel notes of the February 7 conversation.

The judgment is affirmed.

Kingsley, Acting P. J., and Rogan, J.,* concurred.

A petition for a rehearing was denied March 25, 1980, and appellant's petition for a hearing by the Supreme Court was denied April 30, 1980.

---

*Assigned by the Chairperson of the Judicial Council.