57 Cal.Rptr.3d 530 (2007)
149 Cal.App.4th 1066
The PEOPLE, Plaintiff and Respondent,
v.
Christopher Hendrix TOWERS, Defendant and Appellant.
No. B188368.
Court of Appeal of California, Second District, Division Eight.
April 17, 2007.
*531 Richard J. Moller, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Margaret E. Maxwell and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.
RUBIN, J.
Christopher Hendrix Towers appeals from the judgment entered after a jury convicted him of first degree burglary. Towers contends there was insufficient evidence to support the trial court's finding that he sustained two prior serious or violent felony convictions for purposes of the Three Strikes law. We reverse the Three Strikes finding as to one of those convictions, for violation of Penal Code section 288a, but affirm as to the other finding, *532 and remand for further proceedings, including a new trial on the strike if the prosecution so chooses.

FACTS AND PROCEDURAL HISTORY
In December 2005 a jury convicted Towers of first degree burglary. (Pen.Code, § 459.)[1] The trial court found true allegations that Towers had suffered two previous serious felony convictions for purposes of the Three Strikes law. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) Those were a 1984 Tennessee conviction for second degree burglary (Tenn.Code Ann., § 39-3-401), and a 1989 California conviction for oral copulation. (Former § 288a, subd. (c).)[2] Towers contends there was insufficient evidence to find that either conviction qualified as a serious (§ 1192.7) or violent (§ 667.5) felony.

DISCUSSION

1. Burden of Proof and Standard of Review

The Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) provides longer sentences for convicted felons who were previously convicted of a violent felony as defined by section 667.5, subdivision (c) or a serious felony as defined by section 1192.7, subdivision (c). A defendant with one or more such prior convictions (strikes) must be sentenced for the current offense under the Three Strikes law. (§ 667, subd. (f)(1).)[3] The prosecution bears the burden of proving beyond a reasonable doubt that a defendant's prior convictions were for either serious or violent felonies. When a defendant challenges the sufficiency of the evidence to uphold a finding that his prior convictions qualified as strikes, the test on appeal is whether a reasonable trier of fact could have found that the prosecution sustained its burden. We review the record in the light most favorable to the trial court's findings. (People v. Rodriguez (2004) 122 Cal.App.4th 121, 128-129, 18 Cal.Rptr.3d 550 (Rodriguez).)
Our inquiry is limited to the entire record of the conviction. If the elements of the strike offense allowed a conviction for conduct that might not have qualified as a serious felony, unless other evidence in the record shows the nature of the conduct that led to the conviction, we must presume that the prior conviction was based on the least punishable offense. (People v. McGee (2006) 38 Cal.4th 682, 706, 42 Cal.Rptr.3d 899, 133 P.3d 1054; People v. Rodriguez (1998) 17 Cal.4th 253, 261-262, 70 Cal.Rptr.2d 334, 949 P.2d 31; Rodriguez, supra, 122 Cal.App.4th at pp. 128-129, 18 Cal.Rptr.3d 550.)
To the extent we interpret statutes, we apply the well-known rules of statutory *533 construction. "`The fundamental rule of statutory construction is to ascertain the intent of the Legislature in order to effectuate the purpose of the law.... In doing so, we first look to the words of the statute and try to give effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage. The words must be construed in context and in light of the nature and obvious purpose of the statute where they appear.... "`The statute must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity....'" ... If the language of a statute is clear, we should not add to or alter it to accomplish a purpose which does not appear on the face of the statute or from its legislative history.' [Citation.] Statutes must be harmonized, both internally and with each other. [Citation.]" (Pang v. Beverly Hospital, Inc. (2000) 79 Cal.App.4th 986, 994, 94 Cal.Rptr.2d 643.)

2. The 1989 Conviction Under Section 288a

Section 288a, subdivision (c) makes oral copulation a felony under three circumstances: (1) when committed on a child under age 14 by a person at least 10 years older than the victim; (2) when committed against the victim's will by "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person ...;" or (3) when committed against the victim's will by "threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility the perpetrator will execute the threat...." Threatening to retaliate means "a threat to kidnap or falsely imprison, or inflict extreme pain, serious bodily injury, or death." (§ 288a, subd. (I).)[4]
Towers concedes that oral copulation on a child under age 14, or by force, violence, duress, etc. are serious felonies. (See § 1192.7, subd. (c)(5) [oral copulation by force, violence, duress, etc., is a serious felony]; § 1192.7, subd. (c)(6) [lewd or lascivious act on child under age 14 is a serious felony]; People v. Murphy (2001) 25 Cal.4th 136, 142-149, 105 Cal.Rptr.2d 387, 19 P.3d 1129 (Murphy) [violation of section 288a, subd. (c)(1) is lewd and lascivious conduct for purposes of section 1192.7, subd. (c)(6)].) Towers contends that violating section 288a by threatening retaliation under subdivision (c)(3) is not a statutory "serious felony." Because the evidence shows nothing about the factual nature of his conviction, he concludes we must presume that his conviction was based on that provision and therefore did not qualify as a strike.
Respondent concedes that the record shows nothing about the conduct upon which Towers's conviction was based, and that we must presume the conviction was based on a threat of retaliation under section 288a, subdivision (c)(3).[5] Respondent, however, contends that a conviction under that section qualifies as a serious felony *534 because it constitutes both duress and a threat of great bodily injury under section 1192.7, subdivision (c)(5). Although respondent's position has much commonsense to commend it, based on a careful review of the legislative scheme, we must disagree.[6]
Section 1192.7 was passed into law by the voters as part of Proposition 8 in 1982. (See Historical and Statutory Notes, 50D West's Ann. Pen.Code (2004 ed.) foll. § 1192.7, pp. 88-89.) At that time, section 288a applied to oral copulation on children under 14 by those 10 years older than the victim and to oral copulation by "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person...." (Historical and Statutory Notes, 48 West's Ann. Pen. Code (1999 ed.) foll. § 288ap. 501.) In 1982, the rape statute (§ 261) identified by subdivisions several different means of committing that crime, including: where the victim lacked the ability to consent due to a mental disorder, intoxication, or unconsciousness; where it was accomplished by force, violence, or fear of immediate and unlawful bodily injury on the victim or another person; and where the act was accomplished against the victim's will by "threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat. As used in this paragraph, `threatening to retaliate' means a threat to kidnap or falsely imprison, or to inflict extreme pain, serious bodily injury, or death." (§ 261, subd. (a)(6); see Historical and Statutory Notes, 48 West's Ann. Pen.Code, supra, foil. § 261 at p. 183.) The original 1982 version of section 1192.7 applied to "rape" (§ 1192.7, subd. (c)(3)), without qualification or limitation as to the means by which a particular rape was committed. The original version of section 1192.7 applied to "oral copulation by force, violence, duress, menace, or threat of great bodily harm;...." (§ 1192.7, subd. (c)(5).) It also applied to lewd acts on a child under age 14 (§ 1192.7, subd. (c)(6); see Historical and Statutory Notes, 50D West's Ann. Pen. Code, supra, foil. § 1192.7 at pp. 88-89), and section 1192.7, subdivision (c)(6) was later held applicable to violations of section 288a, subdivision (c)(1). (Murphy, supra, 25 Cal.4th at pp. 142-149, 105 Cal.Rptr.2d 387, 19 P.3d 1129.)
Section 288a was amended in 1985 to include oral copulation committed by threats of retaliation. (Historical and Statutory Notes, 48 West's Ann. Pen.Code, supra, foil. § 288a at pp. 500-501.) The legislative history states this was done to make section 288a conform to section 261 (Assem. Floor Analysis, Concurrence in Sen. Amends, of Assem. Bill No. 2121 (1985-1986 Reg. Sess.) as amended Aug. 20, 1985, p. 2), and the new language was virtually identical to the elements and definition of retaliation used in the rape provision. In 1986, the Legislature amended the serious felony statute section 1192.7, subdivision (c)(5), to add "fear of immediate and unlawful bodily injury on the victim or another person" to the types of conduct that would make a violation of section 288a a serious felony. (See Historical *535 and Statutory Notes, 50D West's Ann. Pen.Code, supra, foil. § 1192.7 at p. 88.) The legislative history states that this amendment was non-substantive and was intended to have section 1192.7, subdivision (c) conform to section 288a, apparently because section 1192.7, subdivision (c)(5) used the phrase "threat of great bodily harm," while section 288a, subdivision (c) used the phrase "fear of immediate and unlawful bodily injury" (Assem. Com. on Public Safety, com. on Assem. Bill No. 3373 (1985-1986 Reg. Sess.) May 5, 1986.) However, that amendment did not include the threat of retaliation language that the Legislature had added to section 288a just the year before. Finally, section 261 was amended in 1990 to add duress (and menace) to the categories of conduct by which rape might be accomplished. (See Historical and Statutory Notes, 48 West's Ann. Pen.Code, supra, foil. § 261 at p. 183.)
In short, the Legislature took one statute that already made oral copulation by duress a crime (§ 288a) and added threats of retaliation as a separately defined element of the offense, then, conversely, took the rape statute (§ 261), which already included threats of retaliation as a separately defined element of the crime, and added duress as part of another separately defined element. If a threat of retaliation as defined in sections 261 and 288a was nothing more than a subspecies of duress, we doubt the Legislature would have taken the trouble to have amended the statutes. Although it seems logical to conclude that duress should include a threat to kidnap, kill, or severely injure a victim or their loved ones in the future, the statutory and case law definitions of those two elements highlight some key differences between the two.
Sections 261 and 288a define threats of retaliation identically: if the defendant threatens to retaliate in the future against the victim or another; if the threat is to kill, commit kidnap or false imprisonment, or to inflict extreme pain or serious bodily injury; and if there is a reasonable possibility the defendant will execute the threat. (§§ 261, subd. (6), 288a, subds. (c)(3), (I).) Section 288a does not define duress, but case law has held that the Legislature intended the following definition: Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes; it is a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to either perform an act which otherwise would not have been performed, or to acquiesce in an act to which one otherwise would not have submitted. (People v. Senior (1992) 3 Cal.App.4th 765, 775, 5 Cal. Rptr.2d 14; see People v. Leal (2004) 33 Cal.4th 999, 1004-1005, 16 Cal.Rptr.3d 869, 94 P.3d 1071.) Section 261, subdivision (b) defines duress in similar language.[7]
These contrasting definitions have two key differences. First, a threat of retaliation is expressly limited to future actions, while duress contains no time limitation and could conceivably include more immediate threats. Second, and most important, the existence of duress hinges on two *536 factors: the circumstances at the time, including the relationship between and ages and sizes of the perpetrator and the victim; and whether the threat was sufficient to coerce a reasonable person of ordinary susceptibilities to act, or acquiesce in an act, that otherwise would not have been performed. The threat of retaliation inquiry is more limited, however Once there is evidence that a threat to kill, kidnap, falsely imprison, or physically harm was made, the only issue left to determine is whether there was a reasonable possibility the threat would be executed. The circumstances at the time, and the reasonableness of the victim's conduct in response, are not examined. Given these differences, and in order to avoid a construction that would result in surplusage, we interpret duress as used in section 288a to mean something different than a threat of retaliation as used in that same statute.
This leads us back to the original 1982 version of section 1192.7, and the 1986 amendment to that provision. Because rape could be committed by several means, including threats of retaliation, the use of the all-encompassing term "rape" in subdivision (c)(3) of section 1192.7 in 1982 was intended to apply to rape when committed by each of the several separately described means then prohibited by section 261. Because section 288a did not then include language concerning threats of retaliation, subdivision (c)(5)'s language concerning force, violence, duress, menace, or threat of great bodily harm could not have been intended to cover threats of retaliation. The Legislature amended section 288a in 1985 to conform to section 261 by adding threats of retaliation. One year later, it added language concerning fear of immediate bodily injury to section 1192.7, subdivision (c)(5) in order to precisely track the language of section 288a, but did not add language concerning threats of retaliation to the definition of oral copulation as a serious felony. The Legislature's failure to include the recently added threat of retaliation language when it amended section 1192.7, subdivision (c)(5) in 1986 is puzzling, but this chain of events shows that the Legislature, either intentionally or by oversight, did not include oral copulation by threat of retaliation as a statutorily defined serious offense.[8]
Respondent also contends that a violation of section 288a by threats of retaliation is a serious felony because that phrase is subsumed by section 1192.7, subdivision (c)(5) and its application to threats of great bodily harm. As amended in 1975, section 288a applied to oral copulation committed by "threat of great bodily harm." In 1980, the Legislature amended the statute to apply to fear of immediate unlawful bodily injury on the victim or another. (See Historical and Statutory Notes, 48 West's Ann. Pen.Code, supra, foll. § 288a at pp. 500-501.) Relying on dicta in People v. White (2005) 133 Cal.App.4th 473, 480-481, 34 Cal.Rptr.3d 848 (White), respondent *537 contends that our appellate courts have broadly construed the term "threat of great bodily harm" to include threats against third persons and threats of future harm. According to respondent, when the Legislature used the term "threat of great bodily harm" in defining oral copulation as a serious felony (§ 1192.7, subd. (c)(5)), it must have incorporated that previous judicial definition. The judgment in White was vacated on February 20, 2007, however, when the United States Supreme Court granted a petition for certiorari and remanded the matter for consideration in light of its recent decision in Cunningham v. California (2007) 549 U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856. (White v. California (2007) ___ U.S. ___, 127 S.Ct. 1222, 167 L.Ed.2d 45.) Accordingly, it is no longer good law.[9]
As noted above, because threats of retaliation were not included in section 288a when section 1192.7 took effect, the latter's use of the phrase "threat of great bodily harm" in subdivision (c)(5) could not have been intended to apply to threats of retaliation as later defined by legislative amendment. Furthermore, even if a threat of great bodily harm could be so construed, it would only partially apply to threats to kill or inflict extreme pain or serious bodily injury, and would not necessarily apply to threats to kidnap or falsely imprison.
To sum up, given the legislature's previous treatment of these concepts under section 288a, even if commonsense tells us otherwise, a threat of retaliation is not the same as duress. Because we must presume that Towers's 1989 conviction under that provision was for a threat of retaliation, and because that particular violation *538 of section 288a was not at the time of his present conviction a serious felony, the finding that his prior conviction qualified as a strike must be reversed. The people may seek a new trial on that issue. (Monge v. California (1998) 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615; People v. Barragan (2004) 32 Cal.4th 236, 259, 9 Cal.Rptr.3d 76, 83 P.3d 480.)[10]

3. The Tennessee Burglary Conviction

In 1984, Towers was convicted of second degree burglary in Tennessee. He contends there was insufficient evidence that the crime qualified as a serious felony under section 1192.7, or that he was the person the records showed suffered that conviction.
In order for that conviction to qualify as a strike, it must have involved conduct that would qualify as a serious felony in California. In making that determination, we examine the entire record of the prior conviction and the elements of the offense. (People v. Avery (2002) 27 Cal.4th 49, 53, 115 Cal.Rptr.2d 403, 38 P.3d 1.) Any first degree burglary is a serious offense. (§ 1192.7, subd. (c)(18).) First degree burglary requires entry into an inhabited dwelling house or the inhabited portion of any other building with the intent to commit grand or petit larceny or any felony. (§§ 459, 460.) In 1982, Tennessee law defined first degree burglary as "... [T]he breaking and entering into a dwelling house, or any other house, building, room or rooms therein used and occupied by any person or persons as a dwelling place or lodging either permanently or temporarily and whether as an owner, renter, tenant, lessee or paying guest, by night, with intent to commit a felony." (Tenn.Code Ann., § 39-3-01.) At the time, second degree burglary was defined identically except for one' difference where the crime occurred during the day, not at night. (Tenn.Code Ann., § 39-3-403.)
Because the Tennessee burglary statute requires the intent to commit any felony, and because in 1982 certain conduct such as a second conviction for marijuana possession, or sodomy, were felonies in Tennessee but not in California, Towers contends the broader intent requirement of Tennessee's second degree burglary statute leaves open the possibility that he acted with an intent that would not have qualified as a felony for purposes of California's burglary law. That theoretical possibility is belied by the record, however. Towers was originally indicted for first degree burglary in an indictment that alleged he broke into and entered someone's house with the intent to take and carry away the owner's personal property and to convert those items to his own use and deprive the owner of their use. In short, Towers was charged with entering someone's home in order to commit at least petit larceny, which meets the definition of first degree burglary in California. (§§ 459, 460.) Because the only difference between first and second degree burglary in Tennessee was whether the crime occurred during the night or the day, and because California's burglary statute does not include such a distinction, Towers's eventual conviction of second degree burglary based on those charges does not preclude a trier of fact from finding that the Tennessee conviction qualified as a *539 serious felony under section 1192.7, subdivision (c)(18.)
Finally, Towers contends there was insufficient evidence to show he was the person convicted of the Tennessee crime because the Tennessee prison records identify the person as Larry Christopher Towers (not Christopher Hendrix Towers) and because the mug shot that came with the records is dark and blurry. First, the record before us contains a black and white photocopy of a mug shot, while the record from the Three Strikes allegations hearing shows the court examining a color photograph. Although the clerk's transcript photocopy is dark, we cannot presume that the original examined by the court contained the same defect. Furthermore, Tennessee prison records show a birth date of March 28, 1958, with a birthplace of Memphis, Tennessee, for the defendant, who had a tattoo of the word "Jean" on his left arm. The abstract of judgment from this case shows that Towers was also born in Tennessee on March 28, 1958, and his California prison records show that he had three tattoos, including one on his left arm that said "Jean." On this record, a trier of fact could easily find that he was the same person as the Larry Christopher Towers who was convicted in Tennessee of burglary in 1984.

DISPOSITION
For the reasons set forth above, the judgment is reversed only as to the Three Strikes allegation based on Towers's 1989 California conviction under section 288a, subdivision (c), and the matter is remanded for a new trial as to that issue only. If a retrial results in a finding that the California conviction qualified as a strike conviction, then the original sentence is reinstated. If not, then the trial court is to hold a new sentencing hearing. In all other respects, the judgment is affirmed.
COOPER, P.J., and BOLAND, J., concur.
NOTES
[1] All further undesignated section references are to the California Penal Code.

The facts surrounding the crime are not relevant on appeal. The essential facts are that a woman awoke in the early morning hours of October 21, 2003, and found Towers standing by her bed. They struggled briefly, and Towers was arrested as he fled the house. The judgment came from Towers's re-trial after we reversed his earlier conviction because the trial court failed to exercise its discretion when ruling on Towers's motion to represent himself under the rule of Faretta v. California (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. (People v. Towers (Aug. 19, 2005, B177168), 2005 WL 1995102 [nonpub. opn.].)
[2] As we discuss post, at footnote 4, section 288a was later amended to separately designate by number the types of conduct it prohibited, but that amendment did not make a substantive change in the law.
[3] Because the two versions of Three Strikes in sections 667 and 1170.12 are identical, we will refer to only section 667.
[4] When Towers was convicted of this offense in 1989, the three types of conduct described in subdivision (c) were contained in one paragraph. In 1998, subdivision (c) was amended to separately number each type of conduct. (See Historical and Statutory Notes, 48 West's Ann. Pen.Code (1999 ed.) foll. § 288a, p. 501.)
[5] The record is comprised of fingerprint cards, a mug shot, an inmate chronological movement history from the Department of Corrections, and an abstract of judgment that shows nothing other than a bare conviction of section 288a, for which the low term of three years was imposed.
[6] Respondent does not contend that the prior conviction qualifies as a strike because it is a violent felony, perhaps because at the time of trial, section 667.5, subdivision (c)(5) was worded identically to section 1192.7, subdivision (c)(5), omitting oral copulation by retaliation. (See Historical and Statutory Notes, 49 West's Ann. Pen.Code (2007 Supp.) foll. § 667.5, p. 193.) Since the passage of Proposition 83 (Jessica's Law) in November 2006, however, section 667.5, subdivision (c)(5) has been amended to include all violations of section 288a, subdivision (c). (See Historical and Statutory Notes, 49 West's Ann. Pen.Code (2007 Supp.) foll. § 667.5, pp. 190-193, 203-205.)
[7] Section 261, subdivision (b) defines duress as "a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted. The total circumstances, including the age of the victim, and his or her relationship to the defendant, are factors to consider in appraising the existence of duress." While the provision as originally enacted included "hardship" in the definition, that term was deleted by a later amendment. (People v. Leal, supra, 33 Cal.4th at p. 1006, 16 Cal.Rptr.3d 869, 94 P.3d 1071.)
[8] Because rape by threat of retaliation was made a serious felony, we find it hard to understand why oral copulation committed by the same means was not. This omission has apparendy been corrected, however, by the 2006 passage of Proposition 83 (Jessica's Law), which amended section 667.5, subdivision (c)(5) to make all violations of section 288a, subdivision (c) violent felonies, not just those that were committed by force, violence, duress, etc. (See Historical and Statutory Notes, 49 West's Ann. Pen.Code, supra, foil. § 667.5 at pp. 190-193, 203-205.) Because all violations of section 288a are hereafter violent felonies, they now count as strikes under the Three Strikes law. For those cases such as this one in which the strike preceded the amendments, the record of the prior would have to show the oral copulation was committed on a child under 14 by a person 10 years older or by force, violence, etc. to qualify as a serious felony.
[9] Nor are we persuaded by the three decisions relied upon by the White court, each of which is inapplicable in this context: People v. La Salle (1980) 103 Cal.App.3d 139, 162 Cal.Rptr. 816 (La Salle), People v. St. Andrew (1980) 101 Cal.App.3d 450, 161 Cal.Rptr. 634 (St.Andrew), and People v. Cassandras (1948) 83 Cal.App.2d 272, 188 P.2d 546 (Cassandras ). (White, supra, 133 Cal.App.4th at pp. 480-481, 34 Cal.Rptr.3d 848.) The defendant in La Salle was convicted of rape by threats of great and immediate bodily harm. At issue was whether the defendant's conduct could have been reasonably construed as a threat of harm, not whether that threat was immediate. Even though there was evidence that the victim was afraid the defendant would harm her daughter if she did not comply, evidence that the defendant physically restrained the victim, combined with evidence that she did not resist because she feared harm to herself at that time, was sufficient to show an implied threat of great bodily harm to the victim. (La Salle, supra, at pp. 148-149, 162 Cal.Rptr. 816.) In short, the La Salle court focused on evidence showing a threat to harm the victim unless she complied in order to support a conviction for rape by a threat of immediate harm. Nothing in that holding can be read to apply to threats of future harm or threats to a third person.

Likewise, in St. Andrew, supra, 101 Cal. App.3d 450, 161 Cal.Rptr. 634, where due to various prejudicial errors, the court reversed defendant's convictions of rape by threat of immediate bodily harm and of forcible oral copulation. To guide the trial court on remand, the St. Andrew court discussed the jury instructions on the issue whether the rape had been accomplished by a threat of great and immediate bodily harm (id. at pp. 465-466, 161 Cal.Rptr. 634), but nowhere discussed the then applicable requirement of section 288a that oral copulation occur by a threat of great bodily harm.
Finally, the court in Cassandras, supra, 83 Cal.App.2d 272, 188 P.2d 546, affirmed a conviction for rape by threats of immediate bodily injury by ignoring evidence that the victim was afraid she would lose her children because the defendant threatened to phone the police and accuse her of prostitution, holding instead that evidence showing the victim was pushed into a room, told she would not get out if she did not get in bed, and to keep still if she did not want to get hurt, all showed that threats of great and immediate bodily harm had been made. (Id. at pp. 276-278, 188 P.2d 546.) person.
[10] Towers contends that a retrial on the strike allegation violates the constitutional prohibition against double jeopardy and his constitutional due process rights. Even though Barragan and Monge held to the contrary, he asks us to ignore them because he believes there are enough votes on the United States Supreme Court to overrule Monge. We decline his invitation and will follow the current controlling authority on this subject.